CARNEGIE FINANCIAL CORP., APPELLEE, *v.* AKRON NATIONAL BANK & TRUST CO., APPELLANT; HOBBS ET AL., APPELLEES. █

( No. 7967—Decided July 1, 1976.)

*Mr. Seymour R. Brown* and *Mr. Robert E. Danaceau,* for plaintiff-appellee.

*Mr. Frederick S. Corns,* for appellant.

*Mr. Randolph L. Snow,* for defendants-appellee.

HARVEY, J. This appeal arises from the trial court's order establishing the priority of liens upon certain automobiles and determining damages involved in the automobile transactions.

Defendant Ash-Li Motors, Inc. (hereinafter referred to as Ash-Li) was an automobile dealership selling Subaru and Triumph automobiles. In November 1973, Ash-Li entered into a financing agreement with plaintiff-appellee, Carnegie Financial Corporation. This agreement provided that plaintiff would pay to the Subaru distributor the invoice price of the Subarus which Ash-Li purchased for inventory. In exchange for this payment, Ash-Li would execute a promissory note. The note was secured by the certificates of origin for the automobiles, which plaintiff kept until Ash-Li paid the note. (The certificate of origin is a document which an automobile dealer must present to the Clerk of Courts to secure a certificate of title for the purchaser.)

During July and August 1974, Ash-Li sold Subarus to defendants Shirl G. Hobbs, John L. Donley and Steven Lavy and to defendant Michael K. Bailes (hereinafter referred to collectively as the purchasers). All of these automobiles were financed in part through defendant Akron National Bank and Trust Company (hereinafter referred to as Akron National). Hobbs borrowed $3,180; Donley borrowed $1,730; Lavy borrowed $3,380 and Bailes borrowed $2,469.

Ash-Li had an established procedure for financing sales through Akron National. When a customer wanted to finance an automobile, Ash-Li would telephone the loan application to Akron National. If the application was approved, the customer would sign a promissory note and security agreement (with the automobile as collateral) in favor of Ash-Li. Ash-Li would then assign the note and security agreement to Akron National for the amount of the loan.

Upon the receipt of a documentary draft (and after an inspection of the note and security agreement), Akron National would credit Ash-Li's checking account for the

amount of the draft. This enabled Ash-Li to pay plaintiff the amount of the promissory note and thereby redeem the certificate of origin for the sold automobile.

The financing for the purchasers' automobiles followed the usual procedure. However, when its checking account was credited for the amount of the drafts, Ash-Li did not redeem the certificates of origin for the purchasers' automobiles. As a result of Ash-Li's failure to redeem the certificates of origin, the purchasers did not receive certificates of title for their automobiles.

When plaintiff discovered that Ash-Li was selling the automobiles without redeeming the certificates of origin (known as selling "out of trust"), it filed suit against Ash-Li upon seven outstanding promissory notes. A number of these notes were secured by the automobiles involved in this appeal.

Through plaintiff's counsel, Ash-Li answered by confessing judgment for the outstanding debts totaling $40,-259.82. This was done pursuant to the cognovit provision in the promissory notes. The trial court found in favor of plaintiff and appointed a receiver to manage Ash-Li's assets. Meanwhile, Ash-Li filed for bankruptcy and the federal district court relieved the receiver of his duties.

On October 18, 1974, plaintiff filed a second action, based upon the notes, against Ash-Li's owners, Jack and Betty Jean Ashman. The Ashmans had signed the notes in both their individual and corporate capacities, pursuant to an agreement with plaintiff.

On November 5, 1974, plaintiff filed an action against Akron National, the purchasers, Ash-Li and certain other parties not involved in this appeal. Plaintiff sought to have the trial court determine:

" (a) Who is entitled to the liens against the titles of the automobiles?

" (b) What is the priority of the liens?

" (c) What are the respective rights and obligations of all of the parties concerning payment?

" (d) Do the defendant banks have an obligation to pay plaintiff and, if so, in what amounts?

Defendants Hobbs, Donley and Lavy filed counterclaims against plaintiff to recover their certificates of origin and filed cross-claims against Akron National to recover attorney's fees and the sales tax on the automobiles. Defendant Bailes also counterclaimed to recover the title to his automobile and cross-claimed against Akron National to assure that he would not have to pay both plaintiff and Akron National.

All three actions were consolidated for hearing. The trial court, sitting without a jury, decided these actions on stipulations of fact, trial briefs and testimony. It determined that plaintiff had the first lien on the automobiles and Akron National was a subsequent lienholder. The trial court then ordered Akron National to pay plaintiff $10,759 (the amount Akron National gave Ash-Li) to extinguish the first liens. In addition, the trial court ordered plaintiff to give the purchasers their certificates of origin. The cross-claims were determined in favor of the purchasers and the trial court ordered Akron National to pay Hobbs, Donley and Lavy $621.26 each to cover damages and attorney's fees. (In a separate order the trial court found against the Ashmans in the amount of $53,287.70 for actual and punitive damages.) Akron National appeals from this order.

Akron National's assignments of error are:

"1. The determination by the trial court that payment to an automobile dealer authorized to receive payment did not constitute payment to the dealer's financier and thereby extinguishing the latters [*sic*] lien was contrary to law and should be reversed.

"2. The determination by the trial court that the lien of the automobile dealer's floor plan financier is superior to that of the buyers [*sic*] financier was contrary to law and should be reversed.

"3. The trial court finding that banks [*sic*] failure to require the manufacturers [*sic*] statement of origin to be part of documentary draft constituted negligence was contrary to law and should be reversed.

"4. The trial courts [*sic*] award of counsel fees and expenses as damages to the retail buyers by virtue of the

negligence of the buyers [sic] creditor is contrary to law and should be reversed."

The first and second assignments of error are determined collectively. R. C. 4505.13 provides, in pertinent part:

"Sections 1309.01 to 1309.50, inclusive, and section 1701.66 of the Revised Code, do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle. Any security agreement covering a security interest in a motor vehicle, if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument * * * shall be valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants. * * * Exposure for sale of any motor vehicle by the owner thereof, with the knowledge or with the knowledge and consent of the holder of any lien, mortgage, or encumbrance thereon, shall not render such lien, mortgage, or encumbrance ineffective as against the creditors of such owner, or against holders of subsequent liens, mortgages, or encumbrances upon such motor vehicle. * * *"

This statute controls any dispute involving the automobile liens and lien priorities. At trial it was determined that plaintiff knew that Ash-Li was exposing the Subarus for sale. This being the case, plaintiff's liens are ineffective as against the purchasers. See, *Levin* v. *Nielsen* (1973), 37 Ohio App. 2d 29.

Plaintiff recognizes that it lost its liens upon any automobiles purchased for cash by a bona fide purchaser. Nevertheless, it maintains that it has a lien upon any automobile financed by the purchasers, because in all cases R. C. 4505.13 gives effect to plaintiff's liens over those of subsequent lienholders.

Akron National contends, however, then when a bona fide purchaser for value purchases an automobile subject to a prior lien, the purchaser receives a clear title to the automobile and the prior lien is extinguished. Thus, Akron

National argues that it is not a "holder of a subsequent lien" within the meaning of R. C. 4505.13.

R. C. 4505.13 requires that the holder of a security interest must have "actual and continued possession" of the certificate of origin to enforce his lien. In other words, the lien is in the nature of a possessory lien. Since plaintiff's lien is ineffective against the purchasers, it must surrender the certificates of origin to them. Once plaintiff loses possession of the certificates of origin, it also loses its liens upon the automobiles.

Plaintiff's lien is always extinguished before the purchasers apply for their certificates of title (since the purchaser requires the certificate of origin in order to apply for a certificate of title). Yet, Akron National's lien cannot be perfected until after a certificate of title is prepared (R. C. 4505.13). Therefore, Akron National cannot be a "holder of a subsequent lien" within the meaning of R. C. 4505.13, since its lien is not perfected until after plaintiff's lien is extinguished.

Assuming *arguendo* that it is possible for plaintiff to hold a lien upon the automobiles without possessing the certificate of origin, R. C. 4505.13 still cannot be interpreted as plaintiff urges.

Plaintiff argues that even though it cannot enforce the lien against the purchasers, it can enforce the lien against the creditors of the purchasers who provide the funds for the purchase. In addition, plaintiff argued at trial that even though it did not have a valid lien against an automobile purchased for cash, if the automobile was subsequently used as collaterial for a loan, plaintiff's lien would once again be valid. Even if we were to ignore the preferred position given a purchase money mortgagee in most secured transactions (R. C. Chapter 1309), we find no support for this position in either law or public policy.

Furthermore, plaintiff's interpretation of the statute could bring about the following anomalous situation. When the purchasers signed the security agreements with Ash-Li, they expressly warranted that the titles to their automobiles were unencumbered. If Akron National loses this ap-

peal and then seeks recourse against the purchasers on their warranties, its efforts would be fruitless. The law gives the bona fide purchaser for value an unencumbered title.

We hold that when plaintiff surrendered possession of the certificates of origin, the liens it held were extinguished and Akron National cannot be held liable to plaintiff on the basis of a prior perfected security interest. Therefore, Akron National's assignments of error one and two are well taken.

Assignment of error three is also well taken. The trial court found that Akron National had a legal duty to inspect the certificates of origin or title prior to releasing funds to Ash-Li. It determined that Akron National breached this duty (which permitted Ash-Li to defraud the purchasers) and must, therefore, be liable for any damages which the purchasers suffered as a result of Akron National's negligence.

The trial court relied on R. C. Chapter 1305 to determine that Akron National had a duty to inspect the certificates. R. C. Chapter 1305 applies only to letters of credit. R. C. 1305.01(A)(1) defines "letter of credit" or "credit" as:

"* * * [A]n engagement by a bank or other person made at the request of a customer and of a kind within the scope of section 1305.02 of the Revised Code, that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor."

Nothing in the record indicates that Akron National issued a "letter of credit" to anyone. A letter of credit is a specialized commercial document arising from an agreement between a bank and its customer. It does not evolve everytime a documentary draft is issued in a commercial transaction. Consequently, R. C. Chapter 1305 has no application to the transactions involved in this appeal.

Notwithstanding the inapplicability of R. C. Chapter

1305, we still must determine whether Akron National is liable to the defendant purchasers for damages. There was no contractual negotiation directly between the purchasers and Akron National. Akron National was only an assignee of Ash-Li's duties and liabilities under the notes and security agreements. Since there are no express contractual requirements for Akron National to withhold payment to Ash-Li until it receives the certificate of title, it must be determined if an implied duty exists.

Plaintiff contends that public policy requires that the duty to inspect is implied and that a failure to inspect is an invitation to fraud. In addition, plaintiff argues that since the statutory scheme of R. C. Title 45 invalidates motor vehicle transactions which do not involve a certificate of title, Akron National should have known that it might adversely affect the purchasers by transacting business with Ash-Li before receiving the certificate of title.

While the foregoing are strong policy arguments, there exists a countervailing policy which is equally as valid. At trial, Akron National's agent testified that the bank was aware Ash-Li did not have clear title to the automobiles it sold. Akron National knew that Ash-Li could not secure a clear title until it received the proceeds for the automobiles, so that Ash-Li could repay the floor plan financier. Akron National also knew that in the normal course of business it would receive the certificate of title. In other words, the commercial realities of the automobile business dictate such procedures.

If we were to agree with plaintiff's position, a bank would not release funds until it received a clear title. However, a floor plan financier will not release its lien (i. e., the certificate of origin) until the dealer pays the promissory note. This would result in halting the normal flow of commerce and necessitate a costly and unnecessary escrow procedure.

The public policy in favor of the free flow of commerce and the apparent custom which has evolved to handle automobile financing constrains this court to determine that Akron National had no duty to receive and inspect a certificate of title prior to releasing funds to Ash-Li. Since

no duty exists, none can be breached. Consequently, Akron National cannot be held liable for damages incurred by the purchasers.

Assignment of error four is also well taken. It is well settled that attorney's fees are not recoverable except when there is a specific statutory provision allowing such or where ''the losing party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons.'' See, *Sorin* v. *Bd. of Education* (1976), 46 Ohio St. 2d 177, and, generally, 16 Ohio Jurisprudence 2d 137, 140, Damages, Sections 116, 118. Neither of these exceptions were urged upon the trial court, nor are they evident from the record. Accordingly, we hold that attorney's fees are not recoverable as damages in this action.

Therefore, we determine that plaintiff has no valid lien on any automobile involved in this action. Akron National has a valid first lien on the automobiles involved for the amount it loaned on each automobile, and Akron National owes nothing to plaintiff. Furthermore, Akron National was not negligent in dealing with Ash-Li and owes nothing to defendants Hobbs, Donley and Lavy for damages or attorney's fees.

The judgment of the trial court is reversed, except so far as it pertains to judgments in favor of the plaintiff and against the Ashmans and Ash-Li on the promissory notes.

*Judgment reversed.*

HUNSICKER and BRENNEMAN, JJ., concur.

HUNSICKER, J., retired, and HARVEY, J., of the Court of Common Pleas of Summit County, retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution.

BRENNEMAN, P. J., concurring. I concur in the judgment upon the authority of R. C. 1302.25(B), there being no evidence that the purchasers knew of plaintiff's security agreement.