**FIRST MERIT BANK, N.A., Appellee,**

**v.**

**ANGELINI, d.b.a. Angelini Transportation; Galion
Building and Loan Bank, Appellant.**

[Cite as *First Merit Bank v. Angelini,* 159 Ohio App.3d 179, 2004-Ohio-6045.]

Court of Appeals of Ohio,
Third District, Crawford County.

No. 3–03–34.

Decided Nov. 15, 2004.

Eric Miller, for appellee.

James W. Pry II, for appellant.

SHAW, Presiding Judge.

{¶ 1} Defendant-appellant, Galion Building & Loan Bank ("Galion"), appeals a Crawford County Common Pleas Court judgment granting the motion of plaintiff-appellee, First Merit Bank ("First Merit"), for a preliminary injunction, which compelled Galion to relinquish its security interest and turn over the titles to two motor vehicles. Galion contends that the court abused its discretion by granting First Merit's motion for the injunction and that the court's decision was against the manifest weight of the evidence. Finding that by retaining possession of the certificates of title Galion is the superior lienholder of these vehicles, we reverse the judgment of the trial court.

{¶ 2} This case involves competing ownership interests in two motor vehicles, a 2000 Astro van and a 1997 Saturn automobile. Both vehicles were sold by auto dealer John Angelini from his automotive dealership lot in Galion, Ohio. In January 2002, Angelini sold the van to Carl Ross. Ross was given a trade-in allowance of $5,145 toward the purchase price. The balance of the purchase price was financed by Angelini through First Merit. The Saturn was purchased by Jerry Longacre in March 2002. Longacre was given a $2,196 trade-in allowance, and the balance of the purchase price was financed by Angelini through First Merit. On the day of the purchases, both Ross and Longacre signed over and left their trade-in vehicles with Angelini. Additionally, each left Angelini's lot in his new car. They did not receive either the certificates of title for their new vehicles or evidence that First Merit had received the certificates of title for their new vehicles.

{¶ 3} Prior to the sales, Galion had perfected security interests on both vehicles. Galion's security interests were the result of a consolidated loan. According to Galion's president, Donald Barr, Galion had provided financing to Angelini for several years. Prior to 2001, Angelini had numerous loans with Galion, including an open-ended floor-plan loan. Barr stated that the floor-plan loan was eventually taken over by another bank and that Galion ended up with several individual loans on specific vehicles, one of which was the van. In January 2001, Galion became concerned because several of the individual loans were missing titles to the vehicles that the loans were secured by. When Galion approached Angelini about obtaining those titles, Angelini stated that he had already sold several of the vehicles. Based on the above facts, Galion and Angelini agreed to consolidate all of the individual loans in to one loan, for which Angelini put up certain real estate and several vehicles on his lot as collateral. At this time, Galion took physical possession of the certificates of title to several vehicles, including the two vehicles in question.

{¶ 4} Subsequent to the sales of the van and the Saturn, First Merit made payment for both vehicles to Angelini. Angelini failed to forward payment to Galion. Thereafter, when First Merit requested Angelini to provide clear title, he was unable to do so. Accordingly, First Merit was unable to obtain a certificate of title to either vehicle. Additionally, First Merit was unable to provide Ross or Longacre with a copy of the certificate of title so that they could register and obtain permanent license plates for their vehicles.

{¶ 5} In October 2002, First Merit filed a complaint against Angelini and Galion, alleging that Angelini had committed fraud when Angelini accepted and retained First Merit's loan proceeds and failed to pay off the vehicle's prior perfected lien holders. None of the purchasers of the vehicles were named parties to the action. First Merit also filed a motion for a preliminary injunction, seeking an order to extinguish Galion's perfected security interests in the vehicles and to compel the transfer of the certificates of title. The trial court denied First Merit's motion for injunctive relief, finding that at that time the evidence did not show immediate and irreparable harm.

{¶ 6} Subsequently, in June 2003, First Merit filed a second request for injunctive relief. Again, First Merit sought an order to extinguish Galion's perfected security interest in the vehicles and to compel the transfer of the certificates of title. Following a hearing, the trial court found that Angelini was a dealer of motor vehicles, that the two vehicles were offered for sale as inventory, and that both Ross and Longacre were buyers in the ordinary course of business. The court went on to find that R.C. 1309.320 was made applicable to this case by R.C. 4505.13(A)(2) and was controlling. Thus, the court concluded that the purchasers were to take free of Galion's perfected security interests and that First Merit was entitled to relief. Accordingly, the court granted First Merit's motion for an injunction, ordering that Galion release its security interests over the vehicles and turn over the certificates of title. It is from this judgment that Galion appeals, presenting the following sole assignment of error for our review:

The trial court committed reversible error, abused its discretion, and its decision was against the manifest weight of the evidence which was prejudicial to the defendant/appellant, Galion Bank when the trial court granted the plaintiff/appellee First Merit's mandatory injunction ordering Galion Bank to release it's [sic] properly perfected security interest in two (2) motor vehicles without consideration and thus enabling a First Merit to perfect its security interest in the same collateral.

{¶ 7} Galion maintains that the trial court's decision granting First Merit's motion for injunctive relief was either an abuse of discretion or against the manifest weight of the evidence. However, because the case involves a legal rather than factual issue, we will address this issue as a matter of law.

{¶ 8} In this assignment of error, Galion argues that in determining competing interests in motor vehicles, the Certificate of Title Act, R.C. Chapter 4505, governs over the Uniform Commercial Code ("UCC"), R.C. Chapters 1301 to 1310. Specifically, Galion argues that the court's reliance on R.C. 1309.320 was improper, since claims pertaining to motor vehicles are governed by R.C. Chapter 4505. Further, because Galion had properly perfected its security interest, including making notations of its security interest in the vehicles on the face of the certificate of title and possessing the certificates of title, Galion has priority over the subsequent purchasers and their creditors.

{¶ 9} In the trial court's memorandum decision, the court noted:

This Court must now decide which institution should bear the immediate loss resulting from Angelini's misconduct. To do so it must answer three factual questions.

1. Was Angelini a dealer of motor vehicles?

2. Were the two vehicles offered for sale as inventory?

3. Were the two purchasers buyers in the ordinary course of business?

The court answered all three questions affirmatively. Based on the court's finding that Angelini was a dealer of motor vehicles, that the vehicles were offered for sale as inventory, and that the purchasers were buyers in the ordinary course of business, the court, following *Levin v. Nielsen* (1973), 37 Ohio App.2d 29, 66 O.O.2d 52, 306 N.E.2d 173, found that Galion, as a dealer's lender, was bound by Angelini's sales. Furthermore, the court found that R.C. 1309.320, as made applicable to this case by R.C. 4505.13(A)(2), was controlling.

{¶ 10} R.C. 4505.13(A)(2) states:

Chapter 1309. of the Revised Code applies to a security interest in a motor vehicle held as inventory for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued or without the retention of the manufacturer's or importer's certificate.

R.C. 1309.320 states:

(A) Except as otherwise provided in division (E) of this section, a buyer in the ordinary course of business, other than a person buying farm products from a person engaged in farming operations, takes free of a security interest created by the buyer's seller even if the security interest is perfected and the buyer knows of its existence.

(B) Except as otherwise provided in division (E) of this section a buyer of goods from a person who used or bought the goods for the use primarily for personal, family, or household purposes takes free of a security interest, even if perfected, if the buyer buys:

(1) Without knowledge of the security interest;

(2) For value;

(3) Primarily for the buyer's personal, family, or household purposes; and

(4) Before the filing of a financing statement covering the goods.

While the trial court was correct in noting that R.C. Chapter 1309 is made applicable by R.C. 4505.13(A)(2), R.C. 4505.13 is not controlling in this case.

{¶ 11} In *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513, 751 N.E.2d 1019, the Ohio Supreme Court recently held that R.C. 4505.04(A) controls over provisions of the UCC when determining competing claims of ownership in motor vehicles. Like the case sub judice, the *Saturn* case involved competing interests of ownership in motor vehicles where there had been no transfer of the certificate of title. 92 Ohio St.3d at 513, 751 N.E.2d 1019.

{¶ 12} In *Saturn*, Gallatin Auto Sales ("Gallatin") purchased two motor vehicles from Saturn of Kings Automall ("Saturn"). Saturn allowed Gallatin to remove the vehicles prior to tendering payment. While Saturn allowed Gallatin to take physical custody of the cars, Saturn retained the certificate of title for each of the vehicles pending receipt of payment. Additionally, Gallatin entered into a similar purchase agreement with Cronin Motor Company ("Cronin") for a single vehicle. Like Saturn, Cronin retained possession of the certificate of title pending receipt of payment. Subsequently, Gallatin sold all three vehicles to Mike Albert Leasing, Inc. ("Albert Leasing").

{¶ 13} As in the case sub judice, upon payment by Albert Leasing, Gallatin failed to pay either Saturn or Cronin. Accordingly, neither Saturn nor Cronin would release certificates of title, and Gallatin was not able to provide Albert Leasing with the certificates of title to the vehicles.

{¶ 14} In *Saturn*, "[t]he primary issue presented for [the Supreme Court's] review [was] whether a person may acquire legal ownership for a motor vehicle without transfer to that person of the vehicle's certificate of title." Id., 92 Ohio St.3d at 515, 751 N.E.2d 1019. To resolve the issue, the Supreme Court noted that it must consider the interplay between Ohio's adoption of the UCC and Ohio's Certificate of Motor Vehicle Title Law, specifically R.C. 4505.04(A).

{¶ 15} In its decision, the court noted:

The Ohio Certificate of Motor Vehicle Title Law was enacted in order to "create an instrument evidencing title which would more adequately protect innocent purchasers of motor vehicles." *Kelley Kar Co. v. Finkler* (1951), 155

Ohio St. 541, 545, 44 O.O. 494, 496, 99 N.E.2d 665, 667. Prior to the enactment, title to a motor vehicle was evidenced only by a bill of sale. G.C. Chapter 6310, 109 Ohio Laws 330. The legislative purpose behind the enactment of the Certificate of Title Act "is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles." *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115, 19 O.O.3d 307, 310, 418 N.E.2d 1355, 1358.

Id., 92 Ohio St.3d at 516, 751 N.E.2d 1019. R.C. 4505.04(A) provides:

No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

The court noted that the language of R.C. 4505.04(A) has remained substantially unchanged since its enactment but that the language has been construed in various ways. Id., 92 Ohio St.3d at 516, 751 N.E.2d 1019. Specifically, the court discussed *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355, and *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507, two prior Supreme Court cases involving the interplay between the UCC and the Certificate of Title Act in insurance cases, in the latter of which the court "stated that '[i]t is apparent that R.C. 4505.04 is irrelevant to all issues of ownership, *except* those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, instruments evidencing title and ownership.' " Id. at 518, 751 N.E.2d 1019, quoting *Smith,* 37 Ohio St.3d at 153, 524 N.E.2d 507. Accordingly, the court found that the issue of competing claims of ownership was resolved by *Hughes* and *Smith,* in that "R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, *i.e.,* ownership of the automobiles." 92 Ohio St.3d at 519, 751 N.E.2d 1019.

{¶ 16} Furthermore, the Supreme Court noted that while R.C. 4505.04(A) and 1302.44, the specific UCC section at issue, were not in conflict, *Hughes* and *Smith* also made clear that even where the Certificate of Title Act and the UCC were in conflict, "the Ohio Certificate of Title Act would control over the Uniform Commercial Code." Id., citing *Hughes,* 65 Ohio St.2d at 115–116, 19 O.O.3d 307, 418 N.E.2d 1355; *Smith,* 37 Ohio St.3d at 152–153, 524 N.E.2d 507.

{¶ 17} Thus, following the *Saturn* case, we hold that R.C. 4505.04(A) is controlling in this situation. While First Merit argues that *Saturn* is not on point, because it involved competing claims among dealers, we cannot find any language in the *Saturn* opinion limiting its holding to claims among dealers. We are unconvinced by First Merit's argument that it has greater rights due to its status as the creditor of a bona fide purchaser for value. As the court stated in *Saturn*, "[i]n determining competing *claims of ownership of a motor vehicle*, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code." (Emphasis added.) 92 Ohio St.3d at 520, 751 N.E.2d 1019. The court did not specify any specific types of competing claims, and we will not read such additional language into the opinion. Thus, we find *Saturn* and R.C. 4505.04(A) to be controlling in this situation of competing claims of ownership to these motor vehicles.

{¶ 18} Accordingly, applying R.C. 4505.04(A) to the case at bar, we hold that Galion's security interests in the vehicles clearly take priority over First Merit's claim. Under R.C. 4505.04(A), "[n]o person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle * * *." Here Galion properly held and retained possession of the certificates of title to both vehicles at all times. "Pursuant to R.C. 4505.04(A), title to and, thus, ownership * * * does not pass without issuance or delivery of the certificate of title." *Saturn*, 92 Ohio St.3d at 520, 751 N.E.2d 1019. Here the certificates of title were never assigned or delivered to either Angelini or First Merit. Thus, under R.C. 4505.04(A) and *Saturn*, because the certificates of title were never assigned and delivered to Angelini, Angelini was never the lawful owner of the vehicles, and, therefore, could not lawfully pass title to First Merit. Id. Accordingly, by retaining possession of the certificates of title, Galion's security interests in these vehicles remain superior. Id.

{¶ 19} Furthermore, we will not read into this case a constructive passage of title as previously done by appellate courts. Citing *Carnegie Fin. Corp. v. Akron Natl. Bank* (1976), 49 Ohio App.2d 321, 3 O.O.3d 387, 361 N.E.2d 504, First Merit contends that Galion, as a floor-plan lender, allowed Angelini, as a dealer, to offer the vehicles for sale to the general public. See id. at paragraph one of syllabus. Thus, once the vehicles are sold to the bona fide purchaser for value, Galion's interests in the vehicle must extinguish. See id. at paragraph two of syllabus. Additionally, First Merit cites *Carnegie* for the proposition that a purchase money mortgagee has no legal duty to set up an escrow account, inspect the certificates of title, or insist upon a full release of the title prior to parting with the purchase money funds. See id. at paragraph three of syllabus.

{¶ 20} While *Carnegie* does involve a similar factual situation, it was decided prior to *Hughes, Smith,* and *Saturn.* Furthermore, we find *Carnegie* and similar appellate court cases that allowed for the constructive possession of title to pass automatically from the floor-plan lender of a dealer to the creditor of a bona fide purchaser for value to be unpersuasive, especially in light of the Supreme Court's recent decision in *Saturn.* See *Levin,* 37 Ohio App.2d 29, 66 O.O.2d 52, 306 N.E.2d 173; *Fouke v. Commercial Credit Corp.* (1962), 116 Ohio App. 145, 22 O.O.2d 6, 187 N.E.2d 160; *Mut. Fin. Co. v. Kozoil* (1960), 111 Ohio App. 501, 15 O.O.2d 236, 165 N.E.2d 444.

■ {¶ 21} We are also unpersuaded by First Merit's argument that the trial court's reliance upon R.C. 4505.13(A)(2) as a method for allowing the UCC to usurp the Certificate of Title Act was proper. R.C. 4505.13(A)(2) does specifically refer to R.C. Chapter 1309, the Ohio adoption of the UCC secured-transactions article. However, upon a closer reading of R.C. 4505.13, we find that when subsection (A)(2) is read in conjunction with subsection (B), Galion's case is further supported.

{¶ 22} R.C. 4505.13(B) states:

Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, *if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued,* is valid as against the creditors of the debtor, whether armed with process or not, and *against subsequent purchasers,* secured parties, and other lienholders or claimants. All security interests, liens, mortgages, and encumbrances entered into the automated title processing system in relation to a particular certificate of title, regardless of whether a physical certificate of title is issued, take priority according to the order of time in which they are entered into the automated title processing system by the clerk. Exposure for sale of any motor vehicle by its owner * * * or encumbrance on it, does not render that security interest, lien, mortgage, or encumbrance ineffective as against the creditors of that owner, or against holders of subsequent security interests, liens, mortgages, or encumbrances upon that motor vehicle.

(Emphasis added.)

{¶ 23} Here, not only did Galion physically have possession of the certificates of title, but proper notations of Galion's security interest had been made on the face of both certificates of title for the van and the Saturn by the clerk of the common pleas court. Thus, pursuant to R.C. 4505.13(B), Galion's security interest was "valid as against * * * subsequent purchasers." While subsection (B) is subject to subsection (A), we find the specific requirements in subsection (B) to be

controlling. Furthermore, both vehicles had been entered by the clerk of the common pleas court into the automated title-processing system. Accordingly, Galion's security interests in the vehicles are also protected under R.C. 4505.13(B).

{¶ 24} Finally, we are unpersuaded by First Merit's argument that as a matter of public policy the creditors of bona fide purchaser for value must be protected in these situations. Specifically, First Merit argues that a finding for Galion in this case would necessitate escrow in vehicle sales. Based on the above rationale, we find that the Certificate of Title Act was created to protect bona fide purchasers, because motor vehicles are a distinct and different type of goods. To equate the sale of motor vehicles to that of a refrigerator or other household appliance would be to render the Certificate of Title Act meaningless. The act was created to protect Ohio's bona fide purchaser, but that does not mean that a dealer's creditor who has done everything within the Certificate of Title Act should be left without recourse. Accordingly, while R.C. 4505.04(A) may require some extra steps for dealers and purchasers in vehicle sales, we find those steps to be necessary to protect purchasers.

{¶ 25} Based upon the foregoing, we hold that the trial court's judgment granting First Merit's motion for injunctive relief is an error as a matter of law. Accordingly, Galion's sole assignment of error is sustained.

{¶ 26} Having found error prejudicial to the appellant in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

THOMAS F. BRYANT, J., concurs.

CUPP, J., concurs in judgment only.