OPINION
{¶ 1} Appellant North Valley Bank ("North Valley") appeals the decision of the Muskingum County Court of Common Pleas, which granted summary judgment in a lawsuit filed by Appellee Western Surety Company ("Western Surety") regarding a demand on a letter of credit. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellee Western Surety is an insurance company engaged in, inter alia, the business of executing surety bonds in the State of Ohio. In 2000, Western was approached by James Patterson, owner of "Jim's Grocery and Carryout," who was attempting to secure Ohio Lottery sales rights and needed Western's services in obtaining an Ohio Lottery Commission Dealer's Bond. Patterson also contacted Appellant North Valley for a $20,000 letter of credit to secure the dealer's bond. In October 2000, North Valley delivered the Patterson letter of credit to Western Surety. It read in pertinent part as follows:
 {¶ 3} "We hereby establish our Irrevocable Letter of Credit in your favor and authorize you to draw on us, up to an aggregate amount of Twenty Thousand and 00/100 ($20,000.00) U.S. Dollars available by your draft(s) at sight accompanied by your written certification that you, as Surety, have executed or have procured the execution of bond(s) or undertaking(s) at the request of James R. Patterson, and that you have incurred liability, or that a situation exists under which, in the sole judgment of the Surety, claim may be made for loss, cost or expense, and that monies represented by your draft(s) are required in the discretion of the Surety to pay unpaid premiums or fees or for its protection and for the protection of its co-surety(ies) and reinsurer(s), if any, under said bond(s) or undertaking(s) or under agreement(s) of indemnity executed by James R. Patterson."
 {¶ 4} In addition, the letter of credit addressed procedures should North Valley decide not to renew the credit:
 {¶ 5} "We engage with you and all drawers, endorsers and bonafide holders hereof, that all draft(s) drawn under and in compliance with the terms of this Credit will be duly honored by us as specified if presented at this office on or before October 13, 2000 or any extended date, it being a condition of this Irrevocable Letter of Credit that it shall be automatically extended for additional periods of one year from the present or each future expiration date unless sixty (60) days prior to such date we shall notify you in writing by registered mail at the above address that we elect not to renew this Letter of Credit for such additional period. Upon receipt by you of such notice, you may draw on us hereunder by means of your draft on us at sight for the full amount of this Letter of Credit, accompanied by your written certification that you have not been released from past and future liability and that the proceeds of your draft will be applied by you to satisfy any unpaid premiums or fees or any loss, cost, claim or expense which may be incurred by you, or your co-surety(ies) or reeinsurer(s), if any, as a result of having executed or having procured the execution of bond(s) or undertaking(s) as aforesaid, or under agreement(s) of indemnity as aforesaid.
 {¶ 6} "Except as set forth below, this Letter of Credit shall be governed by the Uniform Customs and Practice for Documentary Credits (revision effective January 1, 1994) International Chamber of Commerce Publication No. 500, or any successor publication, and as in matters not covered therein, by the law of the State of South Dakota, including without limitation, the Uniform Commercial Code as in effect in such State."
 {¶ 7} In letters dated June 26, 2003 and September 25, 2003, North Valley advised Western Surety that it would not be renewing the Patterson letter of credit. Western Surety thereupon made a written certification per the above terms and sent it to North Valley. North Valley refused to make the $20,000 payment requested by Western Surety, and also refused to honor a sight draft of $20,000 drawn under the letter of credit.
 {¶ 8} Western Surety commenced litigation against North Valley on November 20, 2003. North Valley answered on December 19, 2003, asserting in part that Western had not demonstrated any loss. Western Surety filed a motion for summary judgment on April 1, 2004. Following North Valley's memorandum contra, the trial court issued a judgment entry on October 13, 2004, sustaining Western Surety's motion for summary judgment and entering judgment against North Valley for $20,000, plus $5,360 for attorney fees and $1,868.49 in interest from October 13, 2003 to September 14, 2004, plus continuing interest of $5.49 per day.
 {¶ 9} North Valley filed a notice of appeal on November 3, 2004. The two Assignments of Error are as follows:
 {¶ 10} "I. The trial court committed reversible error in its Decision of September 14, 2004, when it found that there were no genuine issues of fact and granted summary judgment in favor of plaintiff-appellee.
 {¶ 11} "II. The trial court abused its discretion in finding that defendant-appellant was liable for attorney's fees and expenses incurred by plaintiff-appellee."
 I. {¶ 12} In its First Assignment of Error, North Valley contends the trial court erred in granting summary judgment in favor of Western Surety. We disagree.
 {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.
 {¶ 15} A letter of credit is a specialized commercial document arising from an agreement between a bank and its customer. Carnegie FinancialCorp. v. Akron Nat. Bank Trust Co. (1976), 49 Ohio App.2d 321, 327,361 N.E.2d 504. Letters of credit are unique commercial instruments and are governed by their own unique rules. Nassar v. Florida Fleet Sales,Inc., (S.D.N.Y. 1999), 79 F.Supp.2d 284, 291-292, citing MutualExport Corp. v. Westpac Banking Corp., (C.A.2, 1993), 983 F.2d 420, 423. "Originally conceived as a means of facilitating international sales of goods, the letter of credit has recently come to serve a variety of purposes, such as ensuring the payment of construction loans, guaranteeing the performance of obligations, and supporting the issuance of commercial paper. * * * [T]he letter of credit facilitates the underlying transaction both by substituting the known and secure credit of the issuer, such as a bank, for the unknown and perhaps risky credit of the other party to the underlying transaction, and by ensuring payment `up front,' thereby shifting the burden of litigation to the dissatisfied purchaser of the goods or services." In re Guy C. Long, Inc. 74 B.R. 939, 943, InsuranceCompany of North America v. Heritage Bank, N.A., (C.A. 3, 1979),595 F.2d 171, 173 (footnote omitted). In the case sub judice, the parties agree that South Dakota law would apply, per the language of the letter of credit. SDCL § 57A-51-02(a)(10) defines "letter of credit" as "a definite undertaking that satisfies the requirements of § 57A-5-104 by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value."[1]
 {¶ 16} Upon review of the record in this matter, we find reasonable minds could only conclude that Western made an appropriate draw on the letter of credit on the second basis quoted in our recitation of the facts above, i.e., the "notice of non-renewal" basis. Attached as Exhibit B to Appellee Western's complaint is a copy of a letter by Paul Johnson, an underwriting consultant for CNA, Western's parent company. The letter states in pertinent part as follows:
 {¶ 17} "Western Surety Company, having received notice form the North Valley Bank of its intention not to renew this Letter of Credit for an additional one-year period, herewith submits its sight draft and certifies that it has not been released from past and future liability and that the proceeds of its draft will be applied by it to satisfy any loss, costs, claim or expense which has been incurred by it, or its co-surety(ies), or reinsurer(s), if any, as a result of having executed bond(s) or undertakings(s) or under agreement(s) of indemnity as stated above."
 {¶ 18} North Valley, on the other hand, submitted to the trial court the affidavit of its bank president, Carl Raines, who averred that Western Surety "has not incurred any liability in this case, nor has it shown that any claims have been made against it such that its bond to Mr. Patterson would be in jeopardy." North Valley Memorandum Contra, Exhibit E.
 {¶ 19} SDCL § 57A-5-108(a) mandates in part: "Except as otherwise provided in § 57A-5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. * * *." Other courts have recognized: "The fundamental principle governing documentary letters of credit and the characteristic which gives them their international commercial utility and efficacy is that the obligation of the issuing bank to [honor] a draft on a credit when it is accompanied by documents which appear ontheir face to be in accordance with the terms and conditions of the credit is independent of the performance of the underlying contract for which the credit was issued. This independence principle infuses the credit transaction with the simplicity and certainty that are its hallmarks. The letter of credit takes on a life of its own as manifested by the fact that in credit operations all parties concerned deal in documents, not in goods, services, and/or other performances to which the documents may relate." Nassar, supra, citing Alaska Textile v. ChaseManhattan (C.A.-2, 1992), 982 F.2d 813-815-16 (emphasis added). See, also, Uniform Customs and Practice for Documentary Credits, Article 3, 4.
 {¶ 20} Accordingly, despite North Valley's protestations that the Johnson certification was "untrue," we hold summary judgment was properly granted to Western Surety as to honoring the letter of credit. Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 21} In its Second Assignment of Error, North Valley argues the trial court abused its discretion in awarding attorney fees to Western Surety. We disagree.
 {¶ 22} A trial court's determination to grant or deny a request for attorney fees will not be disturbed on appeal absent an abuse of discretion. Motorists Mut. Ins. Co. v. Brandenburg (1995),72 Ohio St.3d 157, 160, 648 N.E.2d 488. North Valley essentially asserts that it did not act in bad faith, and that attorney fees were therefore unwarranted.
 {¶ 23} In response, Western directs us to the relevant South Dakota law, SDCL § 57A-5-111(e), which provides that if an issuer of a letter of credit dishonors or repudiates its obligation to pay under a letter of credit, then the beneficiary of the letter of credit must additionally be awarded, inter alia, interest owed from the date of dishonor and reasonable attorney fees. Cf. R.C. 1305.10.
 {¶ 24} Accordingly, upon review of the record in the case sub judice, we hold the trial court did not abuse its discretion in awarding attorney fees to Western Surety.
 {¶ 25} Appellant's Second Assignment of Error is overruled.
 {¶ 26} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.
Wise, J. Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed.
Costs to appellant.
[1] This language is virtually identical to the Ohio statutory language. See R.C. 1305.01(A)(10), defining a letter of credit as "a definite undertaking that satisfies the requirements of section 1305.03
of the Revised Code by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value."