OPINION *Page 2 
{¶ 1} Defendants-appellants, Christopher and Christine Neff (hereinafter "the Neffs"), appeal the judgment imposed by the Fostoria Municipal Court, Small Claims Division, entered in favor of plaintiff-appellee, Lucas Stahl (hereinafter "Stahl"). For the reasons that follow, we affirm.
 {¶ 2} This is a dispute between the residents of two adjacent manufactured homes. On or about the night of January 29, 2008, high winds swept through the city of Fostoria. As a result of the high winds, debris from the Neffs' manufactured home allegedly caused damage to Stahl's manufactured home. Stahl filed suit against the Neffs[1] in the Small Claims Division of the Fostoria Municipal Court. Stahl claimed that the Neffs were negligent in the repair of their manufactured home, which resulted, subsequently, in damaging his manufactured home. Judgment was entered for Stahl, and the Neffs appealed raising two assignments of error.
 ASSIGNMENT OF ERROR NO. I The district court erred in not allowing relevant evidence that supported the defense's argument to the proper ownership of mobile home of the night in question, and allowing character evidence and testimony to determine to the outcome of the case and therefore awarding more money in damages than what the plaintiff's home is worth. *Page 3 
 {¶ 3} Before deciding the merits of the Neffs' arguments, we note that Stahl failed to file a brief with this Court. In this situation, App. R. 18(C) states: "in determining the appeal, the Court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." We, therefore, accept the Neffs' statement of the facts and issues as correct. Nonetheless, we are not persuaded that the Neffs' brief reasonably appears to sustain a reversal.
 {¶ 4} In their first assignment of error, the Neffs argue that the trial court improperly ruled that Stahl had standing to bring his negligence claim. At trial, Christopher Neff testified that Stahl was not the actual owner of the manufactured home at the time the damage occurred, and thus, lacked standing to bring suit against him. (Mar. 14, 2008 Tr. at 47-48). Additionally, Christopher Neff moved to admit a copy of the record of sale from the Seneca County Auditor's office, evidencing that the title of Stahl's manufactured home was not in his name until January 31, 2008. (Id.). The trial court, in response, found that because Stahl had been living on the premises and had possession of the manufactured home prior to the date of the damage, he was the equitable owner of the premises. (Id. at 49, 86). Moreover, the trial court found that Stahl became the legal title owner of the property shortly after the date of the incident. (Id.). Overall, the trial court found that Stahl was the appropriate plaintiff for the lawsuit. (Id.). *Page 4 
 {¶ 5} Manufactured homes fall within the Ohio Uniform Commercial Code's ("UCC") definition of "goods," defined in R.C. 1302.01(A)(8) as: "all things which are movable at the time of identification to the contract for sale." Gonder v. Ada Community Imp. Corp. (Mar. 11, 1996), 3d Dist. No. 6-95-18, at *2. In addition, under Ohio's Certificate of Title Act ("CTA"), manufactured homes are treated like motor vehicles, and as such, are subject to the rules governing motor vehicles in Ohio Revised Code Chapter 4505. R.C. 4505.01(A)(2). Consequently, both the rules of the UCC and the CTA govern manufactured homes. However, with respect to the CTA, the Supreme Court of Ohio has significantly narrowed its scope, specifically in relation to the rules of the UCC. Smith v.Nationwide Mut. Ins. Co. (1998), 37 Ohio St.3d 150, 153, 524 N.E.2d 507;Hughes v. Al Green, Inc. (1981), 65 Ohio St.2d 110, 418 N.E.2d 1355.
 {¶ 6} The Court in Smith considered whether the CTA or the UCC applied for purposes of determining whether a seller's insurance policy governed with respect to risk of loss or damage after the sale of an automobile.37 Ohio St.3d at 151-52. The Court held that the CTA was "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Page 5 
Id. at 153. Accordingly, all other issues dealing with ownership are to be governed by the UCC. Id.
 {¶ 7} In addition, this Court has explicitly recognized and has previously followed the limited scope of the CTA. Gonder, 3d Dist. No. 6-95-18, at *2 (stating "it is well established that issues concerning `motor vehicle' ownership rights, except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership, are to be resolved by the appropriate sales provisions contained in R.C. Chapter 1302, the Ohio U.C.C., and not the Certificate of Title Act."). See also, First Merit Bank v. Angelini (2004), 159 Ohio App.3d 179,2004-Ohio-6045, 823 N.E.2d 485.
 {¶ 8} Essentially, this case is about the Neffs' alleged negligent repair to their manufactured home, which caused damage to Stahl's neighboring manufactured home during a wind storm. This is not a situation where the parties are alleging any issues relating to the importation of vehicles, lienholders' rights, rights as bona-fide purchasers, nor are they disputing the instruments evidencing title and ownership. Therefore, the CTA is inapplicable and the UCC governs.See Angelini, 159 Ohio App.3d 179; Gonder, 3d Dist. No. 6-95-18, at *2.
 {¶ 9} Under the UCC, specifically R.C. 1302.42(B), absent an agreement to the contrary, "title passes to a buyer of goods at the time and place at which the *Page 6 
seller completes performance with reference to physical delivery despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." Thus, under the UCC, mere physical possession of a good will be sufficient to transfer title to the buyer, and thereby, provides the buyer standing to sue for any damages to the good. See R.C. 1302.42(B); City of Dayton v.Crane (Jan. 23, 1998), 2nd Dist. No. 16608, at *4 (holding that in the absence of delivery, where goods have been identified to the contract, under R.C. 1302.42(A), "the buyer acquires a `special property' in the goods. Among other things, such a buyer obtains an insurable interest in the goods and a right of action against a third party who causes actionable injury to the goods."). Since Stahl was in possession of the manufactured home at the time of the damage, title had already transferred to him, and he had standing to bring this action against the Neffs. Id.
 {¶ 10} In addition to the standing issue, in their first assignment of error the Neffs also argue that the trial court erred in considering improper lay testimony, and similarly that the trial court erred in its valuation of Stahl's damages.
 {¶ 11} First, the Neffs argue that Stahl should have been required to introduce expert testimony to prove the value of his manufactured home. The Ohio Rules of Evidence, however, (except the rules governing privileges) do not apply to proceedings in the small claims division of a municipal court. *Page 7 
Evid. R. 101(C)(8). Small claims courts are typically considered "`a `layman's forum,' and any attempt to require expert testimony [would be] an undue burden on the plaintiff.'" Marsh v. Lansing Gardens Apts., 7th Dist. No. 07-BE-32, 2008-Ohio-3404, ¶ 12, quoting Stull v. Budget Interior, 7th Dist. No. 02 BA 17, 2002-Ohio-5230, ¶ 11. Furthermore, this Court has expressly held that an "owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property." Freeman v. Blosser, 3d Dist. No. 5-06-06, 2006-Ohio-5386, ¶ 14. Thus, it was not necessary for Stahl to introduce expert testimony as to the value of his manufactured home. Stahl's own testimony was competent, credible evidence for the trier of fact to consider. As such, the trial court did not err when it allowed Stahl to testify as to the value of his manufactured home without requiring Stahl to also introduce expert testimony. The Neffs' argument is, therefore, meritless.
 {¶ 12} The Neffs also argue that the value of the manufactured home should have been the sales price Stahl had paid to the previous owner. The Neffs offered into evidence a record of sale from the Seneca County Auditor's office illustrating that Stahl had only paid $114.84 for the manufactured home. (Mar. 14, 2008, Tr. at 49). Stahl testified that the purchase price represented the amount of back taxes owed on the property, but that since that time, he had made improvements to the manufactured home. (Id.). Stahl also testified that the value of his home before *Page 8 
the damage was around $5,000, but that afterwards, he would have only been able to sell it for about $3,000. (Id. at 12-13). In addition, three independent witnesses testified concerning the value of Stahl's home. (Id. at 50-53). Mr. Thomas, one of Stahl's neighbors, testified that the average value of the home was around $5,500. (Id. at 51). Mr. Eddington, also a neighbor, testified that the reasonable market value for the home was around $5,000, because Stahl had been working on the inside and had already made significant improvements to the home. (Id. at 52). A third neighbor, Mr. Kirsher, testified that the value of the manufactured home was anywhere between $4,500 and $6,000. (Id. at 53).
 {¶ 13} A good's "sales price" and "fair market value" are different. A good's sales price is "[t]he total amount for which property is sold, often including the costs of any services that are a part of the sale." Black's Law Dictionary (8th Ed. 2004) 1227. A good's fair market value is "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction." Black's Law Dictionary (8th Ed. 2004) 1587. Even though the sales price for Stahl's manufactured home was $114.84, the home's fair market value may have been completely different. Here, Stahl testified that he purchased the home for $114.84, the amount of taxes owed on the property; however, there was also evidence presented that the improvements made to the property increased its value. Furthermore, three independent witnesses testified what amount a willing *Page 9 
buyer would pay and a willing seller would accept for the home, and these amounts were all greater than the purchase price. Therefore, the Neffs argument that the purchase price equaled the fair market value of the property is without merit.
 {¶ 14} Additionally, the Neffs argue that the trial court's assessment of the value of Stahl's manufactured home was against the weight of the evidence presented at trial. This Court will not reverse a judgment for being against the manifest weight of the evidence, as long as the judgment is supported by some competent and credible evidence. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280-81,376 N.E.2d 578; Newland v. James' Floors and Interior, 3d Dist. No. 6-07-21,2008-Ohio-275, ¶ 4. Here there was the testimony from Stahl, the Neffs' evidence, and there was testimony from three independent witnesses regarding the value of the manufactured home. (Mar. 14, 2008 Tr. at 12-13, 49, 50-53). Based on this evidence, the trial court concluded that the value of the home was $4,500 or greater. (Mar. 14, 2008 Tr. at 86). After a review of the record sub judice, we find that there was competent, credible evidence to support the trial court's valuation of the manufactured home.
 {¶ 15} Finally, with respect to their first assignment of error, the Neffs also argue that, because the trial court erred in calculating damages, it was against the manifest weight of the evidence. The general rule for determining damages to *Page 10 
personal property was set forth in Falter v. Toledo (1959),169 Ohio St. 238, 240, 158 N.E.2d 893. The owner of personal property may recover either the difference between the fair market value of the property before the accident and the fair market value of the property after the accident; or, he may prove and recover the reasonable cost of repair, provided that the cost of repair does not exceed either the fair market value of the personal property before the damage or the diminution in market value. Falter, 169 Ohio St. at 240; Freeman, 2006-Ohio-5386, at ¶ 12. In Falter, the plaintiffs had plead damages based on the diminution of fair market value, but used the repair cost to prove the diminution. Id. at 239. The Court held that while it was proper to prove the reasonable repair costs as damages, it was not necessary in that case because the plaintiffs had alleged the difference in the market value. Id. at 240. More to the point, in Allstate Ins. Co. et. al v.Reep (1982), 7 Ohio App.3d 90, 91, 454 N.E.2d 580, the 10th District held that, in the absence of evidence on the diminution of fair market, it was proper for the trial court to award damages based on the reasonable repair cost provided it did not exceed the value of the automobile before the accident. Therefore, it depends on the evidence presented at trial. If there is evidence of diminution of fair market value, the plaintiff is limited to that amount even if his costs of repair exceed that value; however, the plaintiff can receive the reasonable costs of repair, as long as *Page 11 
there is no evidence of diminution and repair costs do not exceed the fair market of the automobile before the accident.
 {¶ 16} Here, while Stahl sought to claim damages based on the reasonable repair costs, there is evidence in the record showing the diminution of fair market value to the manufactured home. It also appears from the trial court's findings that the trial court focused on the reasonable repair costs for the basis of Stahl's award. However, for the reasons stated below, we find that under either method of calculating damages, the trial court's award of $3,000 was proper.
 {¶ 17} During the trial, Stahl testified that the estimated cost to repair the damage to the exterior of his home was around $2,448.67. (Mar. 14, 2008 Tr. at 19, 26). Stahl testified that it would take $100 to replace the door on his grill, and that the cost to repair the damage done to the interior of his home was around $2,226. (Id. at 27, 30). In addition to his testimony, Stahl introduced photographs of the exterior and interior of his manufactured home evidencing the damage; (Plaintiffs Exs. 1A-1D; 2; 3; 4A-4B; 5; 6A-6E; 7A-7E). In response, the Neffs also introduced photographs to contradict Stahl's testimony and photographs; (Defendant's Exs. A-E).
 {¶ 18} However, Stahl also testified that before the damage to his manufactured home he could have sold the home for at least $5,000, but after the damage, he could have only sold it for about $3,000. (Mar. 14, 2008 Tr. at 12-13). *Page 12 
In addition, three independent witnesses testified as to the value of Stahl's home. (Id. at 50-53). Mr. Thomas testified that the home's fair market value was around $5,500; Mr. Eddington testified that the fair market value was around $5,000; and Mr. Kirsher testified that the fair market value was between $4,500 and $6,000. (Id. at 51-53).
 {¶ 19} Furthermore, the Neffs introduced evidence indicating that Stahl had only paid $114.84 for the manufactured home. (Id. at 49). Evidence of the price of the property, brought at a sale close in time to the incident, is also competent evidence as to the value of the property. Rowland v. Parkfair Motel Company (Mar. 25, 1981), 2nd Dist. No. 1495, at *4. Therefore, the record of sale, offered by the Neffs, evidencing the price Stahl paid for his manufactured home, was also competent evidence for the trial court to consider in determining the value of Stahl's manufactured home.
 {¶ 20} Consequently, as illustrated above, there was evidence on both the diminution of fair market value and reasonable repair costs. Nevertheless, based on all of the evidence presented, the trial court made the following findings:
 I do find based upon the testimony of the witnesses before me that the value of Mr. Stahl's home prior to the damages was $4,500 or greater. I understand, Mr. Neff, that apparently Mr. Stahl paid the delinquent taxes to become the owner, but I've also got the testimony from him that he made improvements and perhaps more importantly I have testimony from three other individuals that were out there that, their testimony was that that manufactured home was in fact value at $4,500 or more *Page 13 prior to the wind storm. All the court can do is make this decision based upon the evidence before it. And the weight of the evidence weighs in favor of the plaintiff and against the defense regarding the value of the manufactured home. I do not find that the total was worth, as you argued $114.84 and as far as the delinquent taxes, I find it greater than that. Further this court finds that the plaintiff's estimates for repair and replacement to his manufactured home caused by the damages from the defendant's manufactured home due to failure to exercise due care to secure the premises that was being demolished and that those estimates were reasonable as to the exterior and the interior damage and the testimony in regard to the damage to the grill. The Court further notes that the maximum jurisdiction for the monetary damage at the small claims court is $3,000, that the damages proven exceed the $3,000 so the Court has elected to award this case with a judgment for $3,000.
(Mar. 14, 2008 Tr. at 86-87).
 {¶ 21} Thus, the trial court awarded damages based on the reasonable repair costs since it found that the repair costs were reasonable and that the home was worth $4,500 or greater before the wind storm. (Id. at 86). Moreover, the trial court only awarded Stahl $3,000 because it's limited jurisdiction, which was less than the value of the home prior to the storm. (Id.). We find, under the reasonable repair cost calculation, there was competent, credible evidence to support the trial court's decision. Allstate Ins. Co., 7 Ohio App.3d at 91. Additionally, although there was also evidence on the diminution of fair market value, the evidence in the record also supports the trial court's award of $3,000 under a diminution of fair market value calculation. The trial court found that the value of the manufactured *Page 14 
home was $4,500 or greater, and as per Mr. Kirsher's testimony, this greater amount was up to $6,000. (Id. at 51-53, 86). As a result, based on the greater amount of the manufactured home prior to the wind storm ($6,000), and the testimony from Stahl that he could have sold his manufactured home for around $3,000 after the storm, the trial court's award of $3,000 would also be proper under the diminution of fair market value calculation. Falter, 169 Ohio St. at 240.
 {¶ 22} Overall, we find that the trial court's calculation of damages was proper since there is some evidence to support its findings under either of the damage formulas.
 {¶ 23} The Neffs' first assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. II The district court erred in allowing inconsistent witness statements.
 {¶ 24} In their second assignment of error, the Neffs argue that the trial court erred in allowing Stahl's inconsistent testimony. Specifically, the Neffs claim that some of the photographs were inconsistent with Stahl's testimony. Similarly, the Neffs also claim that Stahl's testimony concerning the cause of the damage to his roof, the existence of any home owner's insurance policy, and concerning the weather conditions were all inconsistent. Moreover, the Neffs dispute the validity of Stahl's documentation evidencing his estimates for the cost of repair to the items damaged. *Page 15 
 {¶ 25} These allegations all concern the question of credibility. This Court has previously stated that "`[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" Phelps v. Horn's Crop Service Center (Oct. 18, 1999), 3d Dist. No. 16-89-8, at *2, quoting State v. Awan (1986),22 Ohio St.3d 120, 123, 489 N.E.2d 277. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasonal Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, 1277. Here, the trial court clearly chose to give more weight to Stahl's testimony, inconsistent or not, when it ruled in Stahl's favor. Even if we were to disagree with the trial court's credibility assessment, it was an assessment for the trial court to make, and we will not second-guess its conclusion.
 {¶ 26} The Neffs' second assignment of error is, therefore, overruled.
 {¶ 27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] Title to the Neff's manufactured home was in the name of Christine Neff and her father, Aaron Krupp, who was not found liable as a co-owner of the manufactured home and who was not made a party to this appeal. *Page 1