**HEARTLAND BANK, Appellant,**

v.

**NATIONAL CITY BANK et al., Appellees.**

[Cite as *Heartland Bank v. Natl. City Bank,* 171 Ohio App.3d 132, 2007-Ohio-1940.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–93.

Decided April 24, 2007.

Fisher & Skrobot, L.L.C., David A. Skrobot, and Brett R. Sheraw, for appellant.

Roetzel & Andress, Bruce R. Schrader II, and Kevin J. Osterkamp, for appellee National City Bank.

_____

PETREE, Judge.

{¶ 1} Plaintiff-appellant, Heartland Bank ("Heartland"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee National City Bank ("National City"). For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} The facts of this case are largely undisputed. Heartland is an Ohio banking corporation. National City is a national banking association with its principal place of business in Ohio. Hook & Motter, Inc., d.b.a. Dublin Auto Sales ("Dublin Auto") was an automobile dealership that sold and leased automobiles to the general public. On or about November 29, 2000, Heartland entered an open-end-credit arrangement with Dublin Auto that was evidenced by a universal promissory note ("the note"). Pursuant to the terms of the note, Dublin Auto was able to borrow up to $300,000 from Heartland. In consideration for the open-end credit and to secure the note, Dublin Auto granted Heartland a security interest in all of Dublin Auto's inventory, including automobiles held by Dublin Auto for sale or lease. Heartland's security interest in the inventory of Dublin Auto was perfected by the filing of financing statements with the Ohio Secretary of State and the Franklin County Recorder.

{¶ 3} On December 11, 2001, and pursuant to the arrangement between Heartland and Dublin Auto, Heartland advanced $9,000 to Dublin Auto for the purpose of enabling Dublin Auto to acquire a 1997 Ford F–150 ("F–150"). In view of the $9,000 advance, the certificate of title to the F–150 was physically delivered to Heartland. Heartland has maintained physical possession of the certificate of title since December 11, 2001. The certificate of title designated Dublin Auto as the owner of the motor vehicle. A notation was made on the certificate of title indicating that Heartland was the first lienholder on the motor vehicle. On March 12, 2002, Joe E. Murphy and Michael J. Murphy entered into an agreement with Dublin Auto to purchase the F–150 for a total price of $15,386.63. National City financed the Murphys' purchase of the F–150. Heartland did not receive any funds relating to that sale. On June 12, 2002, a certificate of title was issued designating "Michael J. Murphey" [sic] as the owner of the vehicle, Heartland as the previous owner, Heartland as the first lienholder, and National City as the second lienholder.

{¶ 4} On February 28, 2002, and pursuant to the arrangement between Heartland and Dublin Auto, Heartland advanced $13,000 to Dublin Auto for the purpose of enabling Dublin Auto to acquire a 1999 Jeep Cherokee ("Jeep"). In view of the $13,000 advance, the certificate of title to the Jeep was physically delivered to Heartland. Heartland has maintained physical possession of the certificate of title since February 28, 2002. That certificate of title designated Dublin Auto as the owner of the Jeep, with Heartland as the lienholder. On March 7, 2002, Michael E. Laxton entered into an agreement with Dublin Auto to purchase the Jeep for a total price of $14,045. National City financed Mr. Laxton's purchase of the Jeep. Heartland did not receive any funds relating to that sale. On June 26, 2002, a certificate of title was issued designating Michael E. Laxton as the owner of the Jeep, Heartland as the previous owner, and Heartland as the first lienholder.

{¶ 5} On July 14, 2003, Heartland filed a declaratory-judgment action in the trial court naming National City, Mr. Laxton, and the Murphys as defendants and seeking a declaration that it is the first lienholder on the two motor vehicles at issue in this case. On September 25, 2003, National City filed its answer to Heartland's complaint, as well as a counterclaim against Heartland. National City's counterclaim alleged that Heartland interfered with its contract rights to collect loan payments from its borrowers in connection with the motor vehicles at issue and sought a declaration that the motor vehicles at issue are not subject to any lien asserted by Heartland. On October 15, 2003, National City filed a cross-claim against Joe E. Murphy.

{¶ 6} On March 18, 2004, National City filed a motion for summary judgment as to the declaratory-judgment causes of action in Heartland's complaint and National City's counterclaim. On April 9, 2004, Heartland filed its motion for summary judgment as to the declaratory-judgment causes of action in Heartland's complaint and National City's counterclaim.

{¶ 7} On July 15, 2004, the trial court denied the summary-judgment motions of Heartland and National City. The trial court denied the motions on the basis that neither party had briefed the issue, which, in the trial court's view, was central to the case: whether Heartland had any right to retain possession of the certificates of title.

{¶ 8} The final pretrial conference was held on September 2, 2004, and the parties agreed to attempt to resolve the matter by means of supplemental motions for summary judgment. Accordingly, on September 20, 2004, both Heartland and National City filed supplemental motions for summary judgment.

{¶ 9} On October 20, 2004, Heartland and National City filed a stipulation of dismissal as to National City's counterclaim against Heartland for tortious interference with contract rights.

{¶ 10} On August 5, 2005, the trial court issued a decision finding that Heartland's security interest in the two motor vehicles at issue was terminated upon the sale of the vehicles, based on its application of R.C. 1309.320 and 4505.13(B) to the facts of this case. Accordingly, the trial court denied Heartland's supplemental motion for summary judgment and granted National City's supplemental motion for summary judgment. Finding no just reason for delay, the trial court entered judgment on January 4, 2006.

{¶ 11} Plaintiff timely appeals and sets forth the following four assignments of error for our review:

## Assignment of Error Number One

The trial court erred by rendering summary judgment in favor of defendant-appellee National City Bank and against plaintiff-appellant Heartland Bank because there were no genuine issues of material fact and the evidence was of such a nature that reasonable minds could come to but one conclusion and that conclusion favored plaintiff-appellant Heartland Bank.

## Assignment of Error Number Two

The trial court erred by holding that Ohio Revised Code § 1309.320 rather than Ohio Revised Code § 4505.04 controlled the disputes relating to the motor vehicles at issue in this action because the disputes among the plaintiff-appellant Heartland Bank, defendant-appellee National City Bank, and the purchasers involved competing interests in the motor vehicles.

## Assignment of Error Number Three

The trial court erred by holding that Ohio Revised Code § 4505.13(b) mandated that plaintiff-appellant Heartland Bank's liens on the motor vehicles at issue were terminated upon the attempted sale of those motor vehicles by its owner because plaintiff-appellant Heartland Bank's liens were properly notated on the certificates of title for the motor vehicles and plaintiff-appellant Heartland Bank maintained physical possession of the certificates of title at all times after its liens were notated thereon.

## Assignment of Error Number Four

The trial court erred by holding that plaintiff-appellant Heartland Bank was not entitled to payments on account of its liens on the motor vehicles at issue because plaintiff-appellant Heartland Bank's liens survived any attempted transfer of the motor vehicles.

{¶ 12} For ease of analysis, we will address Heartland's first and second assignments of error together. In its first assignment of error, Heartland

generally argues that the trial court erred in granting summary judgment in favor of National City because there were no genuine issues of material fact and the evidence was of such a nature that reasonable minds could only reach a conclusion in favor of Heartland. Heartland argues in its second assignment of error that the trial court erred in holding that R.C. 1309.320, rather than R.C. 4505.04, controlled the disputes relating to the motor vehicles at issue in this action.

{¶ 13} Appellate review of a trial court's granting of summary judgment is de novo. *Mitnaul v. Fairmount Presbyterian Church,* 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the movant is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 14} This case involves the interplay between Ohio's version of revised Article 9 of the Uniform Commercial Code ("UCC"), which is codified at R.C. Chapter 1309, and Ohio's Certificate of Motor Vehicle Title Law ("Certificate-of-Title Law"), which is embodied in R.C. Chapter 4505. We begin our analysis of Heartland's first and second assignments of error by setting forth the key statutory provisions in those chapters of the Ohio Revised Code that are the subject of this appeal.

{¶ 15} R.C. 1309.320(A) provides:

[A] buyer in the ordinary course of business * * * takes free of a security interest created by the buyer's seller even if the security interest is perfected and the buyer knows of its existence.

{¶ 16} R.C. 4505.04(A) provides:

No person acquiring a motor vehicle from its owner, whether the owner is a * * * dealer * * *, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle * * * and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to * * * the motor vehicle, for a valuable consideration.

{¶ 17} R.C. 4505.13(A) provides:

(1) Chapter 1309. and section 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.

(2) Chapter 1309. of the Revised Code applies to a security interest in a motor vehicle held as inventory for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued, or without the retention of a manufacturer's or importer's certificate.

{¶ 18} Additionally, R.C. 4505.13(B) provides:

Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants. * * *

{¶ 19} Heartland contends that the trial court erroneously permitted R.C. Chapter 1309 to usurp the Certificate-of-Title Law. Specifically, Heartland argues that the trial court erred in finding that R.C. 1309.320(A) was made applicable to this action by means of R.C. 4505.13(A)(2). According to Heartland, R.C. 4505.04(A), and not the provisions of R.C. Chapter 1309, controls in this case, and pursuant to R.C. 4505.04(A), its security interests remained protected because the certificates of title remained in its possession. Heartland also argues under its first and second assignments of error that pursuant to R.C. 4505.13(B) its security interests remained protected because they were notated on the certificates of title for the motor vehicles at issue.

{¶ 20} In support of its arguments, Heartland relies upon the Supreme Court of Ohio decision in *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.* (2001), 92 Ohio St.3d 513, 518, 751 N.E.2d 1019 (*"Saturn of Kings"*). *Saturn of Kings* required the Supreme Court to "consider the interplay between Ohio's adoption of Article 2 of the UCC, codified at R.C. Chapter 1302, and Ohio's Certificate of Motor Vehicle Title Law as embodied in R.C. Chapter 4505." Id. The "primary issue" before the Supreme Court of Ohio in *Saturn of Kings* was "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." Id. at 515, 751 N.E.2d 1019.

{¶ 21} In *Saturn of Kings,* Gallatin Auto Sales ("Gallatin") contracted with Saturn of Kings Automall, Inc. ("Saturn") and Cronin Motor Company ("Cronin") for the purchase of motor vehicles from those two dealers. Saturn and Cronin

allowed Gallatin to take physical possession of the vehicles before payment was tendered, and both retained possession of the certificates of titles for those vehicles. Gallatin sold three of those motor vehicles to Mike Albert Leasing, Inc. ("Albert Leasing"), who paid Gallatin in full. However, Gallatin failed to remit payment to Saturn and Cronin. Saturn and Cronin sued Albert Leasing and Gallatin, seeking replevin and money damages. See id. at 513–514, 751 N.E.2d 1019.

{¶ 22} In its analysis, the *Saturn of Kings* court cited language from earlier Ohio Supreme Court cases, namely *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 19 O.O.3d 307, 418 N.E.2d 1355, and *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507. Specifically, the court quoted the following statement in *Hughes:*

"R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, *i.e.,* ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations. *Kelley Kar Co. v. Finkler* (1951), 155 Ohio St. 541 [44 O.O. 494, 99 N.E.2d 665]; 5 W. Reserve L.Rev. 403, 404 (1954)."

*Hughes* at 115–116, 19 O.O.3d 307, 418 N.E.2d 1355, quoting *Grogan Chrysler– Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 94–95, 13 O.O.3d 154, 392 N.E.2d 1283. In addition, the *Saturn of Kings* court quoted the following language in *Smith:*

"The purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles." * * * [I]t is apparent that R.C. 4505.04 is irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership.

*Smith,* 37 Ohio St.3d at 152–153, 524 N.E.2d 507, quoting *Hughes* at 115, 19 O.O.3d 307, 418 N.E.2d 1355.

{¶ 23} The *Saturn of Kings* court determined that the above-quoted language from *Hughes* and *Smith* resolved the dispute before it, i.e., a dispute between parties with competing claims of ownership and title to the motor vehicles at issue. See *Saturn of Kings,* 92 Ohio St.3d at 519, 751 N.E.2d 1019. Citing *Hughes,* the court determined that it had already "clearly and unequivocally stated that R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile." Id. at 519, 751 N.E.2d 1019.

{¶ 24} The *Saturn of Kings* court expressly held that "in determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code" and observed that Saturn and Cronin "retained possession of the certificates of title to the motor vehicles at issue in this dispute." Id. at 520, 751 N.E.2d 1019. In consideration thereof, the *Saturn of Kings* court resolved:

Pursuant to R.C. 4505.04(A), title to and, thus, ownership of a motor vehicle in this context does not pass without issuance or delivery of the certificate of title. Because the certificates of title were never assigned and delivered to Gallatin, Gallatin was never the lawful owner of the vehicles and, therefore, could not lawfully pass title to appellee. [Saturn and Cronin], by retaining possession of the certificates of title, are the rightful owners of the motor vehicles and, as such, are entitled to the proceeds of sale placed in escrow.

Id.

{¶ 25} In this appeal, Heartland also relies on *First Merit Bank v. Angelini*, 159 Ohio App.3d 179, 2004-Ohio-6045, 823 N.E.2d 485, a decision from the Third District Court of Appeals. *Angelini* involved facts similar to those in the case at bar, and in that case, the Third District found *Saturn of Kings* and R.C. 4505.04(A) to be controlling. *Angelini* involved a 2000 Astro van and a 1997 Saturn automobile. Automobile dealer John Angelini sold the two vehicles from his dealership lot. Prior to the sales, Angelini had granted Galion Building & Loan Bank ("Galion") a security interest in both vehicles as a result of a consolidated loan. A notation of Galion's security interest was made on the certificates of title for the vehicles. Buyers purchased the vehicles with the assistance of financing by Angelini through First Merit Bank ("First Merit"). Payment was made to Angelini for the vehicles, but Angelini did not forward payment to Galion. The buyers took possession of their vehicles on the day of the purchase. However, neither buyer received the certificate of title for his purchased vehicle, as Galion retained physical possession of the certificates of title to the vehicles. See id. at ¶ 2–4, 23.

{¶ 26} First Merit filed a complaint against Angelini and Galion, alleging that Angelini had committed fraud when Angelini accepted the funds from First Merit without paying off the vehicles' prior perfected lienholders. First Merit filed a motion for a preliminary injunction, seeking an order to extinguish Galion's perfected security interests in the vehicles and to compel the transfer of the certificates of title. Following a hearing on the matter, the trial court found that Angelini was a dealer of motor vehicles, that the two vehicles were offered for sale as inventory, and that both buyers were buyers in the ordinary course of business. Finding R.C. 1309.320 applicable by means of R.C. 4505.13(A)(2), the trial court concluded that the purchasers were to take free of Galion's security

interests and that First Merit was entitled to relief. The trial court granted the motion for the injunction, ordered Galion to release its security interests over the vehicles and to turn over the certificates of title. Galion appealed from the judgment of the trial court. See *Angelini* at ¶ 5–6.

{¶ 27} *Angelini* reversed the judgment of the trial court. Citing *Saturn of Kings*, the *Angelini* court determined that "R.C. 4505.04(A) controls over provisions of the UCC when determining competing claims of ownership in motor vehicles. Like the case sub judice, the *Saturn [of Kings ]* case involved competing interest of ownership in motor vehicles where there had been no transfer of the certificate of title." Id. at ¶ 11, citing *Saturn of Kings*, 92 Ohio St.3d at 513, 751 N.E.2d 1019. The *Angelini* court reasoned as follows:

> [A]pplying R.C. 4505.04(A) to the case at bar, we hold that Galion's security interests in the vehicles clearly take priority over First Merit's claim. Under R.C. 4505.04(A), "[n]o person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle * * *." Here Galion properly held and retained possession of the certificates of title to both vehicles at all times. "Pursuant to R.C. 4505.04(A), title to and, thus, ownership * * * does not pass without issuance or delivery of the certificate of title." *Saturn*, 92 Ohio St.3d at 520, 751 N.E.2d 1019. Here the certificates of title were never assigned or delivered to either Angelini or First Merit. Thus, under R.C. 4505.04(A) and *Saturn*, because the certificates of title were never assigned and delivered to Angelini, Angelini was never the lawful owner of the vehicles, and, therefore, could not lawfully pass title to First Merit. Id. Accordingly, by retaining possession of the certificates of title, Galion's security interests in these vehicles remain superior. Id.

Id. at ¶ 18.

{¶ 28} Additionally, the *Angelini* court addressed the issue of whether R.C. 4505.13(A)(2) allowed the UCC to "usurp" the Certificate–of–Title Law. Id. at ¶ 21. The court recognized that R.C. 4505.13(A)(2) specifically refers to R.C. Chapter 1309 and that R.C. 4505.13(B) is subject to R.C. 4505.13(A); however, it found the "specific requirements in subsection (B) to be controlling." Id. at ¶ 23. Applying its interpretation of R.C. 4505.13(B), the *Angelini* court found that Galion's security interest was "valid as against * * * subsequent purchasers" because notation of Galion's security interest had been made on the face of both certificates of title. Id.

{¶ 29} In sum, the *Angelini* court found that pursuant to R.C. 4505.04(A), Galion's security interests in the motor vehicles remained superior because Galion retained possession of the certificates of title and that pursuant to R.C.

4505.13(B), Galion's security interests remained protected because notations of the security interests had been made on the face of both certificates of title.

■ {¶ 30} In urging that we follow the reasoning in *Angelini,* Heartland asserts that *Angelini* was not accepted for review by the Supreme Court of Ohio despite its opportunity to review the case. Heartland suggests that the Supreme Court's decision not to accept the case for review implies that it concurred with the resolution of the case. However, a decision by the Supreme Court of Ohio not to accept an appeal is not a determination on the merits of the case. See S.Ct.Prac.R. III(6). ("After the time for filing jurisdictional memoranda has passed, the Supreme Court will review the jurisdictional memoranda filed and determine whether to accept the appeal and decide the case on the merits.") Therefore, we draw no inference from the fact that the Supreme Court declined to accept an appeal in *Angelini.*

{¶ 31} Applying the same or similar reasoning as applied in *Angelini,* Heartland argues that the reasoning of *Saturn of Kings* applies to the facts of this case because this case involves competing claims between an alleged owner of a motor vehicle and a lienholder. In that regard, Heartland contends that R.C. 4505.04(A) is controlling because the disputes among Heartland, National City, and the purchasers involve competing interests in the motor vehicles. Heartland further argues that based on R.C. 4505.04(A), as well as *Saturn of Kings* and *Angelini,* Dublin Auto "did not have the ability to lawfully transfer title to the Purchasers or National City free and clear of Heartland's liens." Heartland reasons as follows: "Although Heartland subsequently caused certificates of title to the motor vehicles at issue to be issued to the Purchasers, Heartland's liens were not released or cancelled from the certificates. Thus, Heartland's liens survived the attempted transfer of the motor vehicles to the Purchasers and remain the first and best liens on the motor vehicles." Id.

{¶ 32} As to that argument, we find Heartland's reliance on *Saturn of Kings,* as well as *Angelini,* misplaced. In *Saturn of Kings,* the "primary issue" was "whether a person may acquire legal ownership of a motor vehicle without transfer to that person of the vehicle's certificate of title." Id. at 515, 751 N.E.2d 1019. In resolving that dispute, the Supreme Court of Ohio analyzed the interplay between R.C. Chapters 1302 and 4505. The dispute in this case concerns whether Heartland's security interest in motor vehicles held as inventory for sale by a dealer was extinguished upon the sale of those motor vehicles, and it necessitates an analysis of the interplay between R.C. Chapters 1309 and 4505. In *Saturn of Kings,* the court did not analyze the interplay between R.C. Chapters 1309 and 4505. Moreover, contrary to Heartland's implicit assertion, *Saturn of Kings* did not hold that all disputes involving lienholders in a motor vehicle are controlled and resolved by R.C. 4505.04(A). In *Angelini,* the court

determined that the dealer, Angelini, was never the lawful owner of the motor vehicles at issue in that case and therefore could not pass title. Here, the certificates of title designated Dublin Auto, then the retail purchasers, as the title owners of the motor vehicles at issue.[1] Furthermore, Heartland concedes that certificates of title to the pertinent motor vehicles were issued to the retail purchasers of those motor vehicles. Based on the foregoing, we conclude that neither *Saturn of Kings* nor the *Angelini* court's application of *Saturn of Kings* resolves the dispute in this case.

{¶ 33} Consistent with the *Angelini* court's analysis regarding the application of R.C. 4505.13(A)(2), Heartland asserts that although R.C. 4505.13(B) is subject to R.C. 4505.13(A)(2), "the specific requirements in [R.C.] 4505.13(B) are controlling." Heartland contends that although R.C. 4505.13(A)(2) states that R.C. Chapter 1309 applies to a motor vehicle held as inventory for sale by a dealer, "it does not state that Chapter 1309 applies exclusively to such a motor vehicle." Thus, according to Heartland, R.C. Chapter 1309 does not apply when a lien is noted on the face of the certificate of title, because the "more specific language" in R.C. 4505.13(B) controls over R.C. 4505.13(A)(2). Pursuant to Heartland's reasoning, R.C. Chapter 1309 generally applies to a security interest in a motor vehicle held as inventory for sale by a dealer, but if a notation of the security interest has been made on the certificate of title, then R.C. 4505.13(B) controls.

{¶ 34} Additionally, Heartland argues that "[t]he clear language of [R.C.] 4505.04(A) mandates an interpretation of [R.C.] 4505.13(B) that protects a security interest in a motor vehicle when the secured party maintains physical possession of the certificate of title." In support of that argument, Heartland emphasizes the following language in R.C. 4505.04(A): "[N]o waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to * * * the motor vehicle, for a valuable consideration." Thus, according to Heartland, its security interest remains protected under R.C. 4505.13(B) against subsequent purchasers because of the notation of the security interest on the face of the certificates of title and because of its possession of the certificates of title.

{¶ 35} We disagree with Heartland's statutory analysis. R.C. 4505.13(A)(2) provides that R.C. Chapter 1309 (which includes R.C. 1309.320(A)) "applies to a security interest in a motor vehicle held as inventory for sale by a dealer." Contrary to Heartland's argument, language in the first sentence of R.C. 4505.13(B) does not create an exception to that principle when a notation of a lien

---

1. Although the certificates of title, issued June 12, 2002, and June 26, 2002, designate Heartland as the previous owner, Heartland has not asserted that it was at any time the title owner of the motor vehicles at issue. Thus, the discrepancies can be explained only as clerical errors, and we find them to be of no consequence to the resolution of this appeal.

is made on the face of the certificate of title. Indeed, R.C. 4505.13(B) provides that "any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made * * * on the face of the certificate of title * * * is valid as against * * * subsequent purchasers, secured parties, and other lienholders or claimants." However, that provision is "[s]ubject to" R.C. 4505.13(A)'s specific designation of R.C. Chapter 1309 as applying to security interests in motor vehicles held as inventory for sale by a dealer. See R.C. 4505.13(B). Thus, as to the perfection and priority of security interests in motor vehicles held as inventory for sale by a dealer, R.C. Chapter 1309 controls. This finding is consistent with the cross-reference within R.C. Chapter 1309 citing R.C. Chapter 4505 as governing the perfection of security interests in motor vehicles that are not inventory held for sale by a dealer. See R.C. 1309.311. See, also, Comment 4 to UCC 9–311, which states:

Inventory Covered by Certificate of Title. Under [UCC 9–311(d) ], perfection of a security interest in the inventory of a person in the business of selling goods of that kind is governed by the normal perfection rules, even if the inventory is subject to a certificate-of-title statute. Compliance with a certificate-of-title statute is both unnecessary and ineffective to perfect a security interest in inventory to which this subsection applies. Thus, a secured party who finances an automobile dealer that is in the business of selling and leasing its inventory of automobiles can perfect a security interest in all the automobiles by filing a financing statement but not by compliance with a certificate-of-title statute.

{¶ 36} Therefore, R.C. Chapter 1309, and necessarily R.C. 1309.320(A), applies to Heartland's security interest in the motor vehicles at issue in this case because, according to Heartland, the vehicles were held as inventory for sale by a dealer. As outlined above, R.C. 1309.320(A) provides that a buyer in the ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence. It is undisputed that both Laxton and the Murphys were buyers in the ordinary course of business under the Revised Code. Applying R.C. 1309.320(A) to these facts, Heartland's security interest as against Laxton and the Murphys in the motor vehicles at issue was extinguished upon the sale of those motor vehicles. Thus, we conclude that the trial court properly granted summary judgment in favor of National City. Accordingly, we overrule Heartland's first and second assignments of error.

{¶ 37} Heartland argues in its third assignment of error that the trial court erred in holding that R.C. 4505.13(B) mandated that Heartland's liens on the motor vehicles at issue were terminated upon the attempted sale of those motor vehicles. In addition to applying R.C. 1309.320(A) to the facts of this case, the trial court, citing the third sentence in R.C. 4505.13(B), determined that the

"security interest Heartland held on the two vehicles cannot stay with the vehicles once purchased." That sentence provides as follows:

Exposure for sale of any motor vehicle by its owner, with the knowledge or with the knowledge and consent of the holder of any security interest, lien, mortgage, or encumbrance on it, does not render that security interest, lien, mortgage, or encumbrance ineffective as against the creditors of that owner, or against holders of subsequent security interests, liens, mortgages, or encumbrances upon that motor vehicle.

In its analysis, the trial court noted that the omission of "purchaser" from this provision, as one of the entities against whom the lien is effective, has been interpreted to mean that a lienholder's interest is ineffective against a purchaser. See *Natl. City Bank, Akron v. Jim Pritz Ford, Inc.* (Sept. 4, 1990), Tuscarawas App. No. 90AP020015, 1990 WL 139718. In this appeal, Heartland challenges that analysis. Nonetheless, as to Heartland's first and second assignments of error, we have determined that pursuant to R.C. 1309.320(A), Heartland's security interest in the motor vehicles was extinguished upon their sale. Accordingly, it is unnecessary to analyze whether the additional provision cited by the trial court also operated to extinguish Heartland's security interest in the motor vehicles. Therefore, our disposition of Heartland's first and second assignments of error renders moot its third assignment of error.

{¶ 38} In its fourth assignment of error, Heartland argues that the trial court erred in holding that it was not entitled to payments on account of its liens on the motor vehicles at issue, because, according to Heartland, its liens survived any transfer of the motor vehicles. Heartland argues that the motor vehicles at issue are subject to its liens and it is entitled to payment in full in view of those liens, even though it concedes that it has no contractual relationship with any of the purchasers of the motor vehicles at issue. National City argues that if Heartland's security interest survived the sale, then Heartland's only remedy would be as to the motor vehicles. Additionally, National City maintains that Heartland's security interest was terminated and, therefore, it has no rights as against the motor vehicles or the purchasers' payments to National City. On the basis of our determination that Heartland's security interest in the motor vehicles at issue was extinguished upon the sale of the motor vehicles to the retail purchasers, we overrule Heartland's fourth assignment of error.

{¶ 39} For the foregoing reasons, Heartland's first, second, and fourth assignments of error are overruled, and its third assignment of error is moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

SADLER, P.J., and BRYANT, J., concur.