[Cite as *La Gar Marketing, Inc. v. W. Fin. & Lease, Inc.*, 2012-Ohio-4800.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| LA GAR MARKETING, INC. | C.A. No. 25742 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WESTERN FINANCE & LEASE, INC. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. CV2010-02-0773 |

DECISION AND JOURNAL ENTRY

Dated: October 17, 2012

---

CARR, Judge.

{¶1} Appellant, La Gar Marketing, Inc., has appealed the judgment of the Summit County Court of Common Pleas denying its motion for summary judgment and awarding summary judgment to Western Finance and Lease, Inc. This Court affirms.

I.

{¶2} On August 20, 2007, Western Finance entered into an "Equipment Finance Agreement" with Mark's Akron and Medina Truck Sales, Inc. ("Mark's Akron"). Pursuant to the agreement, Mark's Akron purchased a 2000 Mack Truck with VIN of 1M1AA13Y4YW119803 and agreed to pay Western Finance $2117 per month for 24 months. Several weeks later, on September 11, 2007, La Gar bought the same truck from Mark's Akron. La Gar paid Mark's Akron $7000 upfront and agreed that it would pay an additional $970 per month for 18 months. While La Gar was in possession of the vehicle for approximately nine months, La Gar never received a certificate of title for the truck. While La Gar made its

payments to Mark's Akron, Mark's Akron apparently defaulted on its obligation to Western Finance.

{¶3} After La Gar had made approximately nine of the monthly payments, Western Finance repossessed the truck and subsequently sold it at auction. La Gar filed a complaint against Western Finance seeking a declaratory judgment of its superior title, and damages for conversion, trespass of chattel, and negligence. Both parties filed motions for summary judgment. In a judgment entry issued on December 3, 2010, the trial court concluded that La Gar lacked standing to pursue its claims because it did not have a certificate of title. The trial court then dismissed the action for failure to state a claim upon which relief could be granted.

{¶4} La Gar has appealed and raises three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT, PURSUANT TO THE OHIO CERTIFICATE OF TITLE ACT, THE PLAINTIFF HAD NO STANDING TO PURSUE ITS CLAIMS.

{¶5} In its first assignment of error, La Gar argues that it could assert an ownership interest in the truck against a lienholder despite not having a certificate of title to the truck. We disagree.

{¶6} In the underlying action La Gar filed a declaratory judgment action in which it sought to have the court declare that its interest in the truck was superior to Western Finance's interest. The trial court stated that La Gar "must evince a cognizable interest in the truck in order to litigate this matter," and found that La Gar had "not evinced ownership, right, claim, or interest by virtue of possessing a Certificate of Title to the truck at issue." The trial court ultimately concluded that under the plain language of R.C. 4505.04, it could not recognize La

Gar's claimed interest in the truck. On appeal, La Gar argues that it may assert ownership of the truck against a lienholder despite that fact that it does not have a certificate of title. La Gar argues that R.C. 4505.04 is inapplicable because this case does not involve a dispute between two alleged owners of a vehicle asserting competing claims to the vehicle. Although La Gar also filed a motion for summary judgment in the trial court, it does not argue in its assignment of error that the trial court erroneously denied its motion. Accordingly, we confine our review to whether the trial court erred in awarding summary judgment to Western Finance.

{¶7} R.C. 4505.04(B) provides that no court shall "recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered," unless evidenced by a certificate of title, by admission in the pleadings, by stipulation of the parties, or by an instrument showing a valid security interest. The Supreme Court of Ohio has stated that R.C. 4505.04 applies where parties assert competing rights or competing interests in a motor vehicle. *State v. Rhodes,* 2 Ohio St.3d 74, 75; *see also Walther v. Walther*, 2d Dist. No. 20545, 2005-Ohio-907, ¶ 17; *Grogan Chrysler-Plymouth, Inc. v. Gottfried*, 59 Ohio App.2d 91, 94 (6th Dist.1978); and *Rucker v. Alston*, 2d Dist. No. 19959, 2004-Ohio-2428, ¶ 9. "R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations." *Hughes v. Al Green, Inc*., 65 Ohio St.2d 110, 115-116 (1981), quoting *Grogan Chrysler-Plymouth, Inc.*, 59 Ohio App.2d at 94-95. *See also Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc*., 92 Ohio St.3d 513, 518 (2001). Courts have further held that R.C. 4505.04 is "irrelevant to all issues of ownership except those regarding the importation of

vehicles, rights as between lien holders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Stahl v. Neff*, 3d Dist. No. 13-08-09, 2008-Ohio-5195, ¶ 6, quoting *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St.3d 150, 153 (1998).

{¶8}    As this case involves a dispute between the purchaser of an automobile, and the creditor for the seller who alleges to have perfected a security interest, this is a contest "between the alleged owner and lien claimant," and R.C. 4505.04 applies. *Stahl* at ¶ 6.   La Gar maintains that R.C. 4505.04 is inapplicable because this case does not involve a dispute between two alleged owners of a vehicle asserting competing claims to the vehicle.   However, because the precedent established in Ohio holds that R.C. 4505.04 applies in disputes "between the alleged owner and lien claimant," we are compelled to find R.C. 4505.04 applicable in this matter.

{¶9}    The ultimate issue in this case is whether the provisions of Article 9 of the Uniform Commercial Code (UCC) that protects buyers in the ordinary course prevail over the certificate of title requirement in R.C. 4505.04.   The Supreme Court of Ohio interpreted and applied R.C. 4505.04 in *Saturn of Kings*, 92 Ohio St.3d at syllabus, and held that "[i]n determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code."   In that case, a dealer sold a used car to a second dealer and allowed it to take possession of the car, but the first dealer retained possession of the certificate of title until it received payment.   Meanwhile, the second dealer sold the car to a third dealer who was potentially a buyer in ordinary course.   The second dealer, however, never paid the first dealer and therefore never received the certificate of title, so it could not pass the certificate of title to the third dealer.   The first dealer filed a complaint against the second and third dealers for conversion.   The third dealer filed a counterclaim, alleging that it lawfully purchased the car, and requesting that the court order the first dealer to deliver the certificate of

title. The appellate court held that the issue of ownership should be determined by Article 2 of the UCC because the first dealer "entrusted" the car to the second dealer. *Id*. at 514. The Supreme Court of Ohio reversed, and applied R.C. 4505.04 to decide the case in favor of the first dealer, who at all times had retained possession of the certificate of title. The Supreme Court ultimately reasoned that under R.C. 4505.04, "title to and, thus, ownership of a motor vehicle in this context does not pass without issuance or delivery of the certificate of title." *Id*. at 520. It concluded that the second dealer "was never the lawful owner" of the car, and therefore it "could not lawfully pass title" to the car to the third dealer. *Id*.

{¶10} We acknowledge that there are certain factual distinctions between this matter and the circumstances the Supreme Court confronted in *Saturn of Kings*. While this case involves the intersection of R.C. 4505.04 with Article 9 of the UCC, *Saturn of Kings* dealt with Article 2. Furthermore, Mark's Akron remained on the title, but Western Finance purported to have a perfected security interest and had possession of the certificate of title, whereas the dealer in *Saturn of Kings* had possession of a certificate of title in its own name. Even in light of these factual distinctions, the legal reasoning espoused by the Supreme Court in *Saturn of Kings* remains persuasive.

{¶11} The Third District confronted facts very similar to the facts before us in *First Merit Bank, N.A. v. Angelini*, 159 Ohio App.3d 179. 2004-Ohio-6045 (3d Dist.), which involved a dispute between an automobile dealer's creditor and buyers' creditor. The dealer's creditor possessed the certificates of title to the two automobiles in question, and a notation of its security interest was made on each certificate. The dealer sold the cars to purportedly innocent buyers, and the buyers financed the purchase price. Although the dealer was paid in full for the cars, it did not pay the proceeds to its creditor. The dealer's creditor refused to surrender the certificates

of title for the cars, which resulted in the buyers' creditor being unable to perfect its purchase-money security interests in the cars. The buyers' creditor filed a complaint requesting an order terminating the dealer's creditor's interest in the cars, and an injunction requiring transfer of the certificates of title. After the trial court found that Article 9 of the UCC applied because the cars were inventory, the Third District concluded on appeal that the case involved "competing claims of ownership" and held that R.C. 4505.04 was controlling. *Angelini* at ¶ 17. The court reached this conclusion by applying the Supreme Court precedent established in *Saturn of Kings* and held that R.C. 4505.04 governs over the UCC. Thus, the Third District concluded that the retention and possession of the certificates of title made the dealer's creditor's security interests in the vehicle "superior" to the security interests of the buyers' creditor. *Id.* at ¶ 18.

{¶12} We note that the appellant in *Angelini* advanced arguments similar to those made by La Gar here, namely that "as a matter of public policy the creditors of bona fide purchaser for value must be protected in these situations." *Id*. at ¶ 24. The Third District disagreed, concluding:

> [T]he Certificate of Title Act [codified in R.C. 4505.04] was created to protect bona fide purchasers, because motor vehicles are a distinct and different type of goods. To equate the sale of motor vehicles to that of a refrigerator or other household appliance would be to render the Certificate of Title Act meaningless. The act was created to protect Ohio's bona fide purchaser, but that does not mean that a dealer's creditor who has done everything within the Certificate of Title Act should be left without recourse. Accordingly, while R.C. 4505.04(A) may require some extra steps for dealers and purchasers in vehicle sales, we find those steps to be necessary to protect purchasers.

*Id*.

{¶13} In this case, La Gar brought an action for declaratory judgment against Western Finance seeking to have the court declare that its interest in the truck was superior to Western Finance's interest. Thus, this case involves a dispute between an alleged owner and a lien

claimant, and R.C. 4505.04 is controlling. While it may seem unjust that a buyer is unable to benefit from the Article 9 provisions protecting a buyer in the ordinary course, that is a matter left to the discretion of the legislature. There is no dispute that La Gar does not possess a certificate of title to the truck. As the clear language of R.C. 4505.04 mandates that a court may not recognize a "right, title, claim, or interest of any person in or to any motor vehicle" unless evidenced by a certificate of title, the trial court properly concluded that it was unable to litigate this matter and awarded summary judgment to Western Finance.

{¶14} Accordingly, La Gar's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT WESTERN FINANCE'S CLAIM WAS NOT BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS DETERMINATION THAT WESTERN FINANCE HAD NO DUTY TO PURCHASERS OF VEHICLES FROM MARK'S AKRON.

{¶15} In its second assignment of error, La Gar argues that the trial court erred when it rejected La Gar's claims of collateral estoppel on the issue of Western Finance's lien. In its third assignment of error, La Gar argues the trial court incorrectly determined that Western Finance did not owe La Gar a duty. Because our conclusion that La Gar does not have standing to pursue its claims is dispositive of this appeal, this Court declines to address La Gar's second and third assignments of error as they are rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶16}  La Gar's first assignment of error is overruled.  This Court's resolution of the first assignment of error renders the second and third assignments of error moot.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶17} I respectfully dissent because I do not agree that R.C. 4505.04 bars La Gar from asserting a claim against Western Finance.

{¶18} In granting summary judgment to Western Finance, the trial court concluded that La Gar "lack[ed] standing to pursue its claims to the vehicle absent a Certificate of Title evincing [its] rights or interests in the vehicle." Paradoxically, Western Finance did not have title to the vehicle that La Gar purchased either. Instead, the title owner was Mark's Akron, a dealer that sold used vehicles. In a variety of contexts, a certificate of title is not necessary to assert a claim in a motor vehicle. *See, e.g., Rucker v. Alston*, 2d Dist. No. 19959, 2004-Ohio-2428, ¶ 10 (concluding that certificate of title unnecessary to bring conversion claim when defendant did not have a perfected lien on the car and therefore could "[]not be said to have had a valid competing interest in it[]"); *Bobby Layman Chevrolet, Inc. v. Spire Motor Co.*, 157 Ohio App.3d 13, 2004-Ohio-2025, ¶ 10 (4th Dist.) (concluding that R.C. 4505.04 did not prevent a court from ordering transfer of title when the owner or the owner's agent was obligated to do so). Thus, I would conclude that the trial court erred in finding that La Gar could not bring any legal action against an alleged lien holder to the vehicle simply because it did not yet possess legal title to the vehicle.

{¶19} In adopting Article 9 of the Uniformed Commercial Code codified in R.C. Chapter 1309, the Ohio General Assembly saw fit to protect a buyer in the ordinary course of business who purchases a vehicle from a dealer holding such vehicles as its inventory. In this way, purchasers of vehicles who do not yet have a certificate of title, are not at risk of repossession of their vehicle from a lienholder right after driving off the lot. Accordingly,

because Western Finance claims to have held a lien in the vehicle, this case turns upon the application of R.C. 4505.13 and R.C. 1309.320(A). R.C. 4505.13 provides:

> (A)(1) Chapter 1309. and section 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.
>
> (2) Chapter 1309. of the Revised Code applies to a security interest in a motor vehicle held as inventory for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued, or without the retention of a manufacturer's or importer's certificate.
>
> (B) Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

R.C. 1309.320(A) provides:

> Except as otherwise provided in division (E) of this section, a buyer in the ordinary course of business * * * takes free of a security interest created by the buyer's seller even if the security interest is perfected and the buyer knows of its existence.

**{¶20}** R.C. Chapter 1309 governs secured transactions. This chapter establishes a uniform system of priority in many types of collateral. R.C. 1309.201(A) generally provides that a security agreement will be effective not only against the party to the agreement but also against purchasers of the collateral. *See also* R.C. 1309.317 (establishing priority of security interests). Thus, a party holding a perfected security interest will often have priority over a subsequent purchaser of the collateral. With respect to motor vehicles, that principle is reflected in R.C. 4505.13(B). However, there are numerous exceptions to this rule. One major exception is contained in R.C. 1309.320(A), which provides that a buyer in the ordinary course of business

will take free of a security interest created by a seller, even if it is perfected and even if the buyer knows of its existence. Thus, assuming that Western Finance held a perfected security interest in the vehicle and Mark's Akron held it as inventory for sale, La Gar would have taken free of the security interest as a buyer in the ordinary course of business—even if La Gar was aware of the existence of the lien. Accordingly, among the questions that must be resolved in this case is whether the vehicle that La Gar purchased was inventory held for sale by Mark's Akron.

{¶21} Western Finance did not dispute that La Gar purchased the truck and had a bill of sale evidencing its purchase. Nonetheless, relying upon *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St.3d 513 (2001), it argued that La Gar could not assert a superior possessory interest in the vehicle simply because La Gar did not yet possess the title. In *Saturn of Kings* the Ohio Supreme Court considered Article 2 of the Uniform Commercial Code and under what circumstances title and ownership of vehicles could pass between *merchants* who claimed superior ownership rights to some vehicles. *Id*. at 513-515. The court determined that "title to and, thus ownership of a motor vehicle *in this context* does not pass without issuance or delivery of the certificate of title." (Emphasis added.) Id. at 520, citing R.C. 4505.04(A). Significantly, the *Saturn of Kings* court was careful to qualify its holding as applicable in the context of sales transactions between merchants. Thus, I would conclude that reliance upon *Saturn of Kings* is misplaced. This case does not involve competing claims of ownership between merchants. Unlike the merchants in *Saturn of Kings,* Western Finance does not claim ownership of the vehicle, nor did it hold title to the vehicle. Rather, this dispute is between an alleged buyer in the ordinary course and a secured party asserting that its alleged perfected security interest in a vehicle is superior to any interest of the buyer.

**{¶22}** Nonetheless, the majority relies on the statement in *Saturn of Kings* that "'"R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants[.]"'" *Id.* at 518, quoting *Hughes v. Al Green, Inc.,* 65 Ohio St.2d 110, 115-116 (1981), quoting *Grogan Chrysler-Plymouth Inc. v. Gottfried*, 59 Ohio App.2d 91, 94-95 (1978). However, when the Supreme Court decided *Hughes*, R.C. 4505.13 read, in pertinent part,

> Sections 1309.01 to 1309.50, inclusive, and section 1701.66 of the Revised Code, do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle. Any security agreement covering a security interest in a motor vehicle, if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument, or, in the case of a certificate of title, if a notation of such instrument has been made * * * on the face of such certificate, shall be valid as against the creditors of the debtor * * * and against subsequent purchasers, secured parties, and other lienholders or claimants.

(Empahsis omitted.). In other words, when *Hughes* was decided, the way to perfect a security interest in a motor vehicle was by noting the interest on the certificate of title, and, thus, there was never a need to look beyond the certificate of title because a security interest noted on it was valid against all subsequent purchasers. *See* former R.C. 4505.13.

**{¶23}** In 1984, the General Assembly amended R.C. 4505.13, making R.C. Chapter 1309 applicable to vehicles held as inventory for sale by a dealer. *See* R.C. 4505.13(A)(2); *see also Heartland Bank v. Nat'l City Bank*, 171 Ohio App.3d 132, 2007-Ohio-1940, ¶ 35 (10th Dist.) (concluding that R.C. 4505.14(B) is "subject to" R.C. 4505.13(A)(2)'s specific designation of R.C. Chapter 1309 as applying to security interests in motor vehicles held as inventory for sale by dealers, a finding that is consistent with the cross-reference within R.C. Chapter 1309 citing R.C. Chapter 4505 as governing the perfection of security interests in vehicles that are not held as inventory for sale by a dealer). *But see First Merit Bank v. Angelini*, 159 Ohio App.3d 179,

2004-Ohio-6045, ¶ 19-23 (3d Dist).[1]  Thus, a court may have to look beyond the certificate of title to determine if a lien is valid, and, furthermore, a buyer in the ordinary course of a vehicle held as inventory by a dealer takes the vehicle free and clear of a lien.  *See* R.C. 4505.13(A)(2), (B); R.C. 1309.320(A).  Therefore, unlike when *Hughes* was decided, the certificate of title is not dispositive of whether Western Finance had a valid lien. Thus, because the dispute in *Saturn of Kings* was between alleged owners and did not involve a lienholder and the Supreme Court did not examine the import of the amendment to R.C. 4505.13, I do not believe *Saturn of Kings* is dispositive of this case.

{¶24}  Nor do I agree with the majority that *Angelini* is factually similar to this case. The dealership in *Angelini* was apparently[2] not the lawful owner of the vehicles, unlike in this case where it undisputed that Mark's Akron owned the vehicle in question.  *Angelini*, 2004-Ohio-6045, ¶ 18.  In fact, the dealership not being the lawful owner would make *Angelini* more similar to *Saturn of Kings* than to this case.  *See Saturn of Kings*, 92 Ohio St.3d at 520 (concluding that the dealer who had bought the vehicles from Saturn of Kings could not have

---

[1]  The *Angelini* court's conclusion that R.C. 4505.13(B) controlled over R.C. 4505.13(A)(2) was dicta because it had concluded that the dealership "was never the lawful owner of the vehicles, and, therefore, could not lawfully pass title * * *."  *Id.* at ¶ 18. Furthermore, I believe that the *Angelini* court's reasoning is flawed because R.C. 4505.13(A)(2) is more specific and more recently enacted than R.C. 4505.13(B), and it  ignores the legislature's directive that R.C. 4505.13(B) is "subject to" R.C. 4505.13(A).  *See Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 32 ("[A] specific statute will prevail unless the general statute can be shown to be the later adoption of the two and the manifest intent of the General Assembly was to have the general provision control.").

[2]  The majority's summary of the facts as set forth in the *Angelini* opinion is accurate.  *See id.* at ¶ 1-4.  However, the facts in ¶ 1-4 of *Angelini* do not coincide with the ultimate holding in the case.  *Compare id.* at ¶ 18 (concluding that the dealership "was *never* the lawful owner of the vehicles * * *")  (Emphasis added.) *with id.* at ¶ 3 (The creditor took "physical possession of the certificates of title" from the dealer, but there is no indication title was actually transferred to the creditor.).

transferred title to Mike Albert Leasing because it "was never the lawful owner of the vehicles * * *.").

**{¶25}** If La Gar was a buyer in the ordinary course and the vehicle was held as inventory, Western Finance's lien would not be valid against La Gar, and, therefore, Western Finance could "[]not be said to have had a valid competing interest in it." *Rucker*, 2004-Ohio-2428, at ¶ 10. Thus, I believe that a prerequisite to applying R.C. 4505.04 is to determine whether the opposing party could "be said to have * * * a valid competing interest in [the automobile]." *See id.* at ¶ 10. If Western Finance had no lien or if its alleged lien is invalid as against La Gar, R.C. 4505.04 is simply not implicated. Accordingly, because the trial court awarded summary judgment to Western Finance on the basis of standing, it never reached the question of whether Western Finance satisfied its *Dresher* burden and demonstrated that there was no genuine issue as to whether or not La Gar was a buyer in the ordinary course, or whether the truck was held as equipment or inventory. Therefore, I would reverse and remand for the court to do so in the first instance. *See Yoder v. Blake*, 9th Dist. No. 10CA0110-M, 2012-Ohio-861, ¶ 24.

**{¶26}** Additionally, because I believe La Gar's claims should not have been dismissed for lack of standing, I would conclude that La Gar's remaining assignments of error are not moot. I would overrule La Gar's second assignment of error because the judgment submitted for purposes of collateral estoppel does not appear to be final on its face, and, therefore, it would not have preclusive effect on this litigation. However, I would sustain its third assignment of error because Western Finance never moved for summary judgment on La Gar's negligence claim.

APPEARANCES:

COLIN G. SKINNER, Attorney at Law, for Appellant.

CHRISTOPHER J. NIEKAMP, MICHAEL J. PALUMBO, and ANTHONY J. GINGO, Attorneys at Law, for Appellee.